# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

PAULINE ASHTON, as NEXT FRIEND FOR
ELLI BLOCK, a Minor,

               *Plaintiffs*,         **COMPLAINT and JURY DEMAND**

v                                   Case No.:

OKEMOS PUBLIC SCHOOLS,         Hon.
OKEMOS PUBLIC SCHOOLS BOARD
OF EDUCATION; DEAN BOLTON, individually and
in his official capacity as Okemos Public School Board member,
JAYME TAYLOR, individually and in her official capacity
as Okemos Public School Board member, MARY GEBARDA,
individually and in her official capacity as Okemos Public School Board member,
MELANIE C. LYNN, individually and in her official capacity
as Okemos Public School Board member, JOHN J. HOOD, individually
and in his official capacity as Superintendent of Okemos Public Schools;
ANDREA HALLEAD, individually and in
her official capacity as Interim Principal of Okemos
High School; ALLISON CIRONI, individually and in her capacity as Assistant Principal
of Okemos High School, and MARK SHARP, individually and in his official capacity as
Interim Assistant Principal of Okemos High School,

               *Defendants*,

_____

Eric J. Sheppard, P71914
Attorney for Plaintiffs
2109 Hamilton Road, Suite 206
Okemos MI 48864
Ph: 517-618-1580
Fx: 517-913-6321
ericsheppard16@gmail.com

_____

        NOW COMES, the Plaintiffs, Pauline Ashton ("Pauline"), next friend for Elli

Rose Block ("Elli"), a minor (collectively "Plaintiffs"), pursuant to Rule 17(c)(2) of the

Federal Rules of Civil Procedure ("FRCP"), by and through their attorney, Eric J.

Sheppard, and for their Complaint against the above-named Defendants and their employees, agents, and successors in office, state as follows:

**<u>INTRODUCTION AND INITIAL STATEMENT OF FACTS</u>**

1.  This is a school discipline case involving the expulsion of Elli from the Okemos Public Schools.

**First Amendment**

2.  This case involves protected free speech under the **<u>First Amendmen</u>**t.

3.  The First Amendment to the United States Constitution provides that "Congress shall make no law…abridging the freedom of speech." US Const, Am I.

4.  The First Amendment applies to government action in the State of Michigan through the Fourteenth Amendment. *NAACP v Claiborne Hardware Co*, 458 US 886 (1982).

5.  "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v Johnson*, 491 US 397; 109 S Ct 2533 (1989).

6.  "The hallmark of the protection of free speech is to allow 'free trade in ideas' – even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v Black*, 538 US 343; 123 US 1536 (2003).

7.  "Speech may not be banned on the ground that it expresses ideas that offend." *Matal v Tam*, 582 US __; 137 S Ct 1744 (2017).

8.  And "speech cannot be restricted simply because it is upsetting or arouses contempt." *Snyder v. Phelps*, 562 US 443 (2011).

9.      "Speech is often provocative and challenging…[But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest.'" *City of Houston, Tex. v Hill*, 482 US 451, 461; 107 SCt 2502; 96 LEd2d 398 (1987) citing *Terminiello v Chicago*, 337 US 1, 4; 69 SCt 894; 93 LEd 1131 (1949); *Leonard v Robinson*, 477 F3d 347 (ED Mich., 2007).

### Student Speech

10.      The United States Supreme Court has made clear that students do not "shed their constitutional rights to freedom of speech or expression" even "at the school house gate." *Tinker v Des Moines Independent Community School Dist*, 393 US 503; 89 S Ct 733 (1969); *Mahanoy Area School District v BL*, 141 US 2038 (2021).

11.      And while "the constitutional rights of students in public schools are not automatically coextensive with the rights of adults in other settings" and courts must apply the First Amendment "in light of the special characteristics of the school environment," the **First Amendment applies to discipline decisions for students at public schools**. *Bethel School Dist No 403 v Fraser*, 478 US 675 (1986); *Hazelwood School Dist v Kuhlmeier*, 484 US 260 (1998); *Id*.

12.      Generally speaking, "minors are entitled to a significant measure of First Amendment protection." *Brown v Entertainment Merchants Association*, 564 US 786 (2011).

13.      But schools have a special interest in regulating "speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others." *Tinker* at 513.

14.     The First Amendment applies to spoken words as well as electronic communications. *Id*.; *Packingham v North Carolina*, 137 S Ct 1730 (2017).

15.     A State cannot punish citizens for engaging in constitutionally protected speech. *Wright v State of Georgia*, 373 US 284 (1963); *Johnson v State of Virginia*, 373 US 61 (1963); *Cox v State of Louisiana*, 379 US 536 (1965); *Brown v State of Louisiana*, 383 US 131 (1966); *Shuttlesworth v City of Birmingham*, 394 US 147 (1969).

16.     And a public school cannot discipline and expel students who engage in constitutionally protected speech. *Tinker v Des Moines Independent Community School Dist*, 393 US 503; 89 S Ct 733 (1969); *Mahanoy Area School District v BL*, 141 US 2038 (2021).

**Fourth Amendment**

17.     This case is also involves the **Fourth Amendment**.

18.     This case involves Elli and her family waging a complaint against school administrators and the Okemos Public Schools regarding the policies and practices and customs of the Okemos Public Schools in conducting ***suspicionless searches of the school bathrooms***, which implicates the Fourth Amendment of the United States Constitution and the Constitution of the State of Michigan, Art 1, Sec 11.

19.     The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." US Const, Amend IV; *United States v Jones*, 565 US 400 (2012).

20.     "The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures…Boards of Education not excepted." *West Virginia State Bd of Educ v Barnette*, 319 US 624 (1943).

21.     Public school administrators are state actors for purposes of the Fourth

Amendment and are subject to the constitutional prohibition on unreasonable searches

and seizures. *New Jersey v TLO*, 469 US 325 (1985); *Andrews v Hickman County,*

*Tennessee*, 700 F3d 845 (6th Cir 2012) [Fourth Amendment's restrictions on

unreasonable searches extended to the "activities of civil as well as criminal authorities.",

citing *New Jersey v TLO*; *Id*.].

22.     "And children are entitled to the Fourth Amendment's protections even when they

are away from home and attending public school. See, e.g. *Safford Unified Sch. Dist. No.*

*1 v. Redding* , 557 U.S. 364, 370–71, 129 S.Ct. 2633, 174 L.Ed.2d 354 (2009)..."

*Schulkers v Kammer*, 955 F 3d 520 (6th Cir 2020).

23.     A Fourth Amendment search "occurs when the government violates a subjective

expectation of privacy that society recognizes as reasonable." *Kyllo v United States*, 533

US 27 (2001); *California v Ciraolo*, 47 US 207 (1986); *Florida v Riley*, 488 US 445

(1989) [upholding search where governmental officials, lawfully in a public place, do not

conduct unlawful searches, by observing things in plain view].

24.     The Fourth Amendment protects certain expectations of privacy. *Katz v United*

*States*, 389 US 347 (1967).

25.     When an individual "seeks to preserve something as private," and his or her

expectation of privacy is "one that society is prepared to recognize as reasonable," then

official intrusion into that sphere ***generally*** qualifies as a search and ***requires*** a warrant

supported by probable cause. *Smith v Maryland*, 442 US 735 (1979). (emphasis added).

26.     And the Eighth Circuit Court of Appeals has held that a ***person using a public***

***restroom*** enjoys a reasonable expectation of privacy in being shielded from view by the

privacy partitions in the restroom. *United States v White*, 890 F2d 1012 (1989) [finding no Fourth Amendment violation when a female officer followed Doris Wade into an airport restroom and the female officer observed what the female officer could observe through a gap between the bathroom stall door and the bathroom stall wall – noting that "the female officer made her observations from the common area of the restroom by looking through the gap from a distance, and by looking through the gap via the reflections of the bathroom mirror. **She did not position herself in any way that would be unexpected by someone using the restroom. Specifically, she did not peer in "knothole fashion" through the gap. Nor did she look under or over the bathroom stall door**."] (emphasis added).

27.     "As a general matter, 'warrantless searches are presumptively unreasonable,' *Horton v. California*, 496 U.S. 128, 133 (1990)..." *Braam v. Carr*, 20-1059 (7th Cir June 21, 2022).

28.     "The Fourth Amendment prohibits only unreasonable searches. The reasonableness of a search depends on the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." Id. at 310.

29.     Assessing reasonableness under the totality of the circumstances requires "a balancing of individual privacy interests and legitimate state interests to determine the reasonableness of the category of warrantless search that is at issue." *Birchfield v. North Dakota*, 136 S.Ct. 2160, 2185 n.8 (2016); see also *Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999).

### Fourth Amendment in Schools

30.     The United States Supreme Court has implemented a ***relaxed standard*** for searches in the school setting: "[T]he legality of a search of a student should depend simply on the ***reasonableness, under all the circumstances, of the search***. Determining the reasonableness of any search involves a twofold inquiry: **first**, one must consider whether the action was justified at its inception; **second**, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *New Jersey v TLO*., 469 US 325, 341–42, 105 S Ct 733, 83 L.Ed.2d 720 (1985) (internal quotation marks, citation, and alterations omitted) (emphasis added).

31.      "A student search is justified in its inception when there are ***reasonable grounds for suspecting that the search will garner evidence that a student has violated or is violating the law or the rules of the school***, or is ***in imminent danger of injury on school premises***." *Brannum v Overton Cnty. Sch Bd*, 516 F.3d 489, 495–96 (6th Cir 2008). (emphasis added).

32.     "Such a search will be permissible in its scope when the measures adopted are ***reasonably related to the objectives of the search*** and ***not excessively intrusive in light of the age and sex of the student and the nature of the infraction***." *TLO*, 469 US at 342, 105 S Ct 733. (emphasis added).

33.     "In determining whether a search is excessive in its scope, the nature and immediacy of the governmental concern that prompted the search is considered." *Brannum*, 516 F.3d at 497 (internal quotation marks omitted).

34.     "In order to satisfy the constitutional requirements, the means employed must be congruent to the end sought." *Id*.

35.     The United States Supreme Court has upheld suspicionless searches in certain circumstances where the government has "special needs, beyond the normal need for law enforcement." *Griffin v Wisconsin*, 483 US 868 (1987) (quoting *TLO*, 469 US at 351).

36.     In the **school context**, the United States Supreme Court has upheld suspicionless searches for drug testing student athletes (*Veronia School District 47J v Acton*, 515 US 646 (1995) and suspicionless searches for drug testing of all middle school and high school students in order to participated in any extracurricular activity *(Board of Ed of Independent School Dist No 92 of Pottawatomie Cty v Earls*, 536 US 822 (2002)).

37.     Further, the Michigan legislature has codified suspicionless searches of public school students' lockers in MCL 380.1306 et seq., so long as the school district has a policy on searches of students' lockers that informs the students that there is no expectation of privacy in the school lockers or the contents of the school lockers.

38.     But Plaintiff's counsel has not identified any Michigan statute or case law, or federal statute or case law, that upholds ***suspicionless searches of public school bathrooms***.

### Complaint Against School and Background

39.     Again, this case involves Elli and her family waging a complaint against school administrators and the Okemos Public Schools regarding the policies and practices and customs of the Okemos Public Schools in in conducting ***suspicionless searches of the school bathrooms***.

40.     Specifically, school administrators were bending/kneeling/crouching down and looking underneath bathroom stalls when students were present in the school bathrooms, without any reasonable suspicion of any violation of the law or violation of the student code of conduct/board policy ("school conduct").

41.     Elli and her family waged formal complaints and formally challenged the school conduct and the suspicionless searches that were occurring in the school bathrooms – in April 2022 and in May 2022.

42.     Elli believed that the Okemos High School administration officials were invading her privacy by conducting suspicionless searches of her in the bathroom at Okemos High School.

43.     Elli and her family also sought clarification regarding the bathroom search policy and custom and practice – and whether two students being in a single bathroom stall at one time, having a private conversation, violated the Okemos Student Code of Conduct or Okemos School Board policy.

44.      The Okemos Public Schools has offered a purported justification to the suspicionless bathroom searches and to the school conduct: to locate and apprehend and discipline students that were vaping in the school bathrooms.

45.     The Okemos Public Schools has never offered clarification on whether two students being in a single bathroom stall at one time, having a private conversation, violated any provision of the Okemos Student Code of Conduct or Okemos School Board policy.

46.     In *TLO*, regarding the Fourth Amendment, the United States Supreme Court stated, "[s]choolchildren may find it necessary to carry with them a variety of legitimate,

non-contraband items and there is no reason to conclude that they have necessarily waived all rights to privacy in such items merely by bringing them onto school grounds." *Id*.

47.     Similarly, school children may have legitimate, non-vaping, non-violation of the student code of conduct, reasons for two students standing in a single bathroom stall together and having a private conversation; and there is no reason to believe that such students have necessarily waived all rights to privacy in such behavior and conduct, simply by being on school grounds.

48.     Elli and her family made a complaint about the suspicionless bathroom searches and school conduct after events that occurred on or about April 8, 2022 and May 4, 2022.

### April 2022 Event

49.     On April 8, 2022, Okemos High School administrators conducted a suspicionless search of Elli.

50.     Elli was in the school bathroom at Okemos High School with a group of female students.

51.     Elli was not vaping.

52.     Elli was not fighting.

53.     Elli did not have any contraband on her person.

54.     Elli was not violating any student code of conduct provision or board policy or law.

55.     Elli was not acting suspicious in any manner.

56.     And the Okemos High School administrators lacked any reasonable, articulable suspicion that Elli was violating the student code of conduct or board policy or law.

57.     After Elli left the school bathroom on April 8, 2022, Okemos High School administrators compelled Elli go to the school office.

58.     Three different Okemos High School administrators searched Elli, without proper cause or justification.

59.     Elli did not have any vaping products or other contraband on Elli's person.

60.     Elli was not found in violation of any Okemos student code of conduct section or board policy or law.

61.     And Elli was not punished or disciplined for anything that happened on April 8, 2022.

62.     Elli was released to class and finished the school day at Okemos High School.

63.     Elli did not send any messages to Pauline or her step-father, or anyone else, regarding the suspicionless search that was conducted on April 8, 2022.

64.     When Elli arrived home after school on April 8, 2022, Elli informed her stepfather, Michael, that Elli was searched at school, without any proper cause or justification.

65.     On April 13, 2022, Michael emailed Dr. Mark Sharp regarding the suspicionless search of Elli on April 8, 2022.

66.     Michael was making a complaint about the suspicionless search that occurred with Elli on April 8, 2022.

67.     Michael asked about the Okemos Public Schools policy on searches and asked if parents could be notified when students are searched at school. Michael asked about the school policy for students in the bathrooms and behavior that would lead to a search.

68.     Dr. Mark Sharp called Pauline on April 14, 2022 – to discuss the email that was received from Michael.

69.     Pauline was working a 12-hour shift on April 14, 2022, so Michael called Dr. Sharp to discuss the suspicionless search of Elli and the bathroom search policy for Okemos High School and the Okemos Public Schools.

70.     Michael was dissatisfied with the explanation that Dr. Sharp gave regarding the suspicionless search of Elli and the bathroom search policy for Okemos High School and the Okemos Public Schools.

**May 2022 Event**

71.     On the afternoon of May 4, 2022, a specific Okemos High School administrator ("Cironi") conducted a suspicionless search against Elli in the school bathroom at Okemos High School.

72.     Elli was in the school bathroom with Elli's friend, SE.

73.     Elli and SE were in the same stall.

74.     AL, a fellow Okemos High School student, was standing outside of the stall where Elli and SE were located.

75.     Cironi walked into the school bathroom, Cironi asked how many students were in each stall, AL stated, "one," and Cironi bent down and looked underneath the bathroom stalls looking for feet in the bathroom stalls.

76.     Cironi then left the school bathroom.

77.     Later on during the afternoon of May 4, 2022, Elli and AL spoke to one another in person and exchanged text messages with one another regarding the suspicionless bathroom search that occurred on May 4, 2022.

78.     Elli completed the day at Okemos High School.

79.     Elli left school on May 4, 2022 without speaking to any Okemos High School administrators about the suspicionless search against Elli in the school bathroom at Okemos High School.

80.     Soon after the suspicionless search occurred on May 4, 2022, Elli texted Pauline about the event.

81.     After Elli texted Pauline on May 4, 2022, and upon Pauline learning of another suspicionless search of Elli, Pauline and Michael travelled to the school after school was done for the day.

82.     Pauline and Michael made a formal complaint to the Okemos High School administration officials on the afternoon of May 4, 2022 – regarding the suspicionless bathroom searches and the violation of Elli's constitutional rights.

83.     After meeting with and speaking with Okemos High School administration officials, Pauline and Michael did not believe that the Okemos High School administration officials were taking their complaint and concerns seriously.

84.     Pauline and Michael's belief that the Okemos High School administration officials were not taking their complaint and concerns seriously was, in part, based upon the recent bad experiences that Elli, Pauline, and Michael had with the Okemos High School administration officials in April 2022.

85.     The belief was also based on an event from January 26, 2022, where Elli was the subject of targeted bullying at school, Elli reported the bullying to the Okemos Public School administration, and Elli felt that the Okemos Public School administration did not

take her complaint seriously and did not investigate the complaint in order to put a stop to the targeted bullying against Elli.

86.     Pauline and Michael also believed that the Okemos High School administration officials were being untruthful regarding the suspicionless bathroom search and the school conduct that occurred on the afternoon of May 4, 2022 – based upon information that was being reported to Elli and based upon what Elli experienced.

87.     Because Elli and her family did not believe that the Okemos High School administration officials were taking their complaint about the suspicionless bathroom searches and school conduct seriously, and because Elli and her family believed that the Okemos High School administration officials were being untruthful regarding the suspicionless bathroom search that occurred on May 4, 2022, Michael called the Meridian Township Police Department regarding their complaint.

88.     Michael called the Meridian Township Police Department – in an effort to obtain an independent investigation into the suspicionless bathroom searches and other suspicionless searches happening at Okemos High School.

89.     Michael did not call the Meridian Township Police Department to file criminal charges against any Okemos High School administration official.

90.     Michael did not call the Meridian Township Police Department to report any crime.

91.     Meridian Township police officers never asked Michael or Elli whether or not they wanted to press criminal charges against any Okemos High School administration officials.

92.     And neither Michael nor Elli ever requested to press criminal charges against any Okemos High School administration officials.

93.     A Meridian Township Police Department staff member took Michael's initial phone call and initial complaint.

94.     But then the school resource officer from Okemos High School, Officer Bryan Leroy, who is also a Meridian Township police officer, intercepted Michael's complaint and request for an independent investigation with the Meridian Township Police Department.

95.     Officer Leroy interjected himself into the complaint that Michael was making to the Meridian Township Police Department, which was asking for an independent investigation into the suspicionless bathroom searches that were occurring at Okemos High School.

96.     And Officer Leroy called Michael back later on during the evening of May 4, 2022.

97.     Officer Leroy spoke with Michael and Elli on the evening of May 4, 2022.

98.     While speaking with Officer Leroy over the telephone on the evening of May 4, 2022, Michael and Elli made verbal statements regarding the complaint about the suspicionless bathroom searches and the school conduct from Okemos High School.

99.     Specifically, Elli discussed the event from the afternoon of May 4, 2022 and the suspicionless bathroom search and the school conduct.

100.    A portion of Elli's verbal statements to Officer Leroy on the evening of May 4, 2022 included information that was conveyed to Elli from AL, who was in the school

bathroom and witnessed the actions of Cironi in conducting the suspicionless search of the bathroom that occurred on May 4, 2022.

101.   Elli was also conveying her interpretation of text messages sent by AL to Elli on the afternoon of May 4, 2022 and of the verbal conversation that occurred between AL and Elli on the afternoon of May 4, 2022.

102.   After the conversation between Michael and Elli and Officer Leroy occurred on the evening of May 4, 2022, Michael continued to feel dissatisfied with what was happening with the suspicionless searches at Okemos High School.

103.   Further, Michael was dissatisfied that Officer Leroy, a school resource officer intimately connected with Okemos High School administration, was the supposed independent investigator.

104.   So Michael called the Meridian Township Police Department again and spoke with Officer McCready.

105.   Elli's statements on the evening of May 4, 2022 were made off-campus, unconnected from any school-sponsored event, function, or activity, not under school supervision, and from her step-father's personal cell phone.

106.   Elli's statements to Officer Leroy on May 4, 2022 were not true threats aimed at a school official.

107.   Elli's statements to Officer Leroy on May 4, 2022 were not fighting words aimed at a school official.

108.   Elli's statements to Officer Leroy on May 4, 2022 were not defamation aimed at a school official.

109.    Elli's statements to Officer Leroy on May 4, 2022 were not targeted and severe harassment aimed at a school official.

110.    Elli's statements to Officer Leroy on May 4, 2022 were not severe bullying targeting a school official.

111.    Elli's statements to Officer Leroy on May 4, 2022 were not intimidation aimed at a school official.

112.    And Elli's statements to Officer Leroy on May 4, 2022 were not a "verbal assault" aimed at a school official.

113.    Elli's statements to Officer Leroy on May 4, 2022, while they may have been upsetting to Cironi and other Okemos High School administration officials, were **protected speech under the First Amendment**.

114.    Elli's statements to Officer Leroy on May 4, 2022 were protected pure speech and political speech. *Mahanoy*; *Supra*.

115.    Elli later found out, on the early morning of May 5, 2022, that Elli had a communication and interpretation issue with the information that AL had previously texted and told Elli – regarding the particular location and actions of Cironi - in conducting the suspicionless search of the bathroom that occurred on May 4, 2022.

116.    On the afternoon of May 4, 2022, AL texted Elli that Cironi had come into the school bathroom, asked AL how many people were in the stall, AL answered, "one," Cironi knelt down to look underneath the school bathroom stalls to see how many people were in each stall, and then Cironi could not see and came closer to the school bathroom stalls.

117.   Elli had later texted AL that Cironi had lied to Pauline and said that Cironi "didn't even go passed (sic) the sinks."

118.   AL had responded to Elli's text with "Oml…Wow," which Elli interpreted to mean that Cironi had gone past the bathroom sinks in conducting the suspicionless search of the school bathroom on May 4, 2022.

119.   Elli also had a verbal conversation with AL on May 4, 2022, which reaffirmed Elli's belief that Cironi had gone past the bathroom sinks in conducting the suspicionless search of the school bathroom on May 4, 2022.

120.   On the morning of May 5, 2022, Elli met with AL in the school bathroom.

121.   AL reenacted what AL saw Cironi do in the school bathroom on the afternoon of May 4, 2022.

122.   When AL reenacted what AL saw Cironi do in the school bathroom on the afternoon of May 4, 2022, Elli realized that AL did not go past the bathroom sinks.

123.   Again, Elli had previously interpreted Elli's communication with AL on May 4, 2022, including the in person conversation and the text messages, to mean that Cironi had gone past the bathroom sinks to look underneath the school bathroom stalls.

124.   Plaintiffs' counsel asserts that there was a suspicionless search that occurred in the school bathroom on May 4, 2022 – regardless of whether Cironi went past the bathroom sinks or whether Cironi did not go past the bathroom sinks. *United States v White*, 890 F2d 1012 (1989); *New Jersey v TLO.*, 469 US 325, 341–42, 105 S Ct 733, 83 L.Ed.2d 720 (1985).

125.   But the detail of whether Cironi went "past the sinks" or "not past the sinks" was an important detail in the mind of a high school teenager.

126.    When Elli realized the communication and interpretation issue between her and AL regarding the in person conversation and the text messages from May 4, 2022, Elli panicked and felt pressure to "stick with the story" about Cironi going past the bathroom sinks to look underneath the school bathroom stalls – when communicating anything about the events from May 4, 2022.

127.    On the morning of May 5, 2022, AL texted with Elli about the matter.

128.    Elli texted AL that Elli already told Officer Leroy that Cironi was all the way outside of Elli's stall [past the bathroom sinks] when Cironi looked underneath the school bathroom stall on May 4, 2022.

129.    Ell texted AL to "lie ig" because AL's reenactment of the event on the early morning hours of May 5, 2022 had Cironi standing by the bathroom sinks [and not past the bathroom sinks] when Cironi looked underneath the school bathroom stall on May 4, 2022.

130.    Elli's text to AL, in the early morning of May 5, 2022, also stated that "the objective here is to get [Cironi] in trouble, okay?."

131.    Again, for background and context, AL texted and told Elli information about what happened on the afternoon of May 4, 2022 with Cironi conducting a suspicionless bathroom search.

132.    Ell interpreted AL's texts and verbal description to mean that Cironi was past the bathroom sinks when Cironi looked underneath the bathroom stall on May 4, 2022.

133.    Regardless of whether Cironi was "past the sinks" or "not past the sinks," Elli felt that her privacy was being violated on May 4, 2022.

134. Plaintiffs' counsel agrees that Elli's privacy was violated – under *United States v White*, 890 F2d 1012 (1989) and *New Jersey v TLO*., 469 US 325, 341–42, 105 S Ct 733, 83 L.Ed.2d 720 (1985).

135. Elli also felt that Okemos High School administration officials were invading Elli's privacy on multiple occasions, were targeting Elli, and were not listening to Elli's concerns – based upon the events from January 2022, April 2022, and May 2022.

136. Elli was upset and annoyed in the moment on May 5 2022, and Elli sent to text message to AL to "get [Cironi] in trouble."

137. Elli's texts to AL on May 5, 2022 occurred from Elli's private cell phone while Elli was present at Okemos High School.

138. Elli did not specify anything regarding getting Cironi in trouble or clarify what that was supposed to mean.

139. Elli had no plan to get Cironi in trouble for anything.

140. Elli did not know Cironi personally.

141. Elli had limited interactions with Cironi during Eli's time at Okemos High School.

142. And Elli did not have any specific vendetta or grudge against Cironi.

143. Elli never took any steps or measures to get Cironi or any other Okemos High School administrator in trouble.

144. Elli was an upset teenager sending ***spontaneous and unreflective text messages*** to a classmate on the early morning hours of May 5, 2022.

145. Elli's texts from the early morning hours of May 5, 2022 were not true threats aimed at a school official.

146.    Elli's texts from the early morning hours of May 5, 2022 were not fighting words aimed at a school official.

147.    Elli's texts from the early morning hours of May 5, 2022 were not defamation aimed at a school official.

148.    Elli's texts from the early morning hours of May 5, 2022 were not targeted and severe harassment aimed at a school official.

149.    Elli's texts from the early morning hours of May 5, 2022 were not severe bullying targeting a school official.

150.    Elli's texts from the early morning hours of May 5, 2022 were not intimidation aimed at a school official.

151.    And Elli's texts from the early morning hours of May 5, 2022 were not a "verbal assault" aimed at a school official.

152.    Elli's ***spontaneous and unreflective texts*** from the early morning hours of May 5, 2022, while they may have been upsetting to Cironi and other Okemos High School administration officials, were **protected speech under the First Amendment**.

153.    Elli left school on May 5, 2022 without speaking to any Okemos High School administrator about the events from May 4, 2022 and from May 5, 2022.

**Continued Police Involvement as an Agent of the Okemos Public Schools**

154.    Officer Leroy had spoken with Okemos High School administration officials on May 5, 2022.

155.    Officer Leroy had also spoken to AL on May 5, 2022.

156.    Officer Leroy called Elli's step-father and asked if Elli would be willing to come to the Meridian Township Police Department for an interview, despite the fact that Officer Leroy had interviewed AL while AL was at school.

157.    Elli's step-father agreed to bring Elli to the Meridian Township Police Department for an interview with Officer Leroy.

158.    On the early evening of May 5, 2022, Elli appeared for a police interview with Officer Leroy at the Meridian Township Police Department stationhouse.

159.    Elli was alone with Officer Leroy during the police station interview, without a parent or an attorney, which Officer Leroy reports Elli wished for at the beginning of the meeting in the lobby of the police department.

160.    During the course of the police interview on the evening of May 5, 2022, Elli initially told Officer Leroy the same information that was relayed to Elli from AL: that Cironi was standing by Elli's bathroom stall [past the bathroom sinks] and that Cironi bent down to look underneath the bathroom stall.

161.    During the course of the police interview on the evening of May 5, 2022, Elli initially gave untruthful information about whether Elli was alone in the bathroom stall on May 4, 2022 – during the suspicionless search of the school bathroom.

162.    By the end of the police interview, Elli told Officer Leroy that Elli was in the bathroom stall with her friend, SE, and that Elli believed that Elli saw Cironi through the crack of the bathroom stall, but that Elli did not actually see Cironi look underneath Elli's specific bathroom stall.

163.    Elli showed Officer Leroy the text messages between Elli and AL from May 4, 2022, which confirmed Elli's initial information and drove Elli's interpretation about what happened in the bathroom on May 4, 2022.

164.    Elli's text messages between Elli and AL did not make their way into Officer Leroy's police report.

## Lack of any Criminal Activity

165.    It is noteworthy that Elli did not commit any criminal activity on May 4, 2022 – in the course of her off-campus police interview with Officer Leroy.

166.    And Elli did not commit any criminal activity on May 5, 2022 – in the course of her off-campus police interview with Officer Leroy.

167.    Elli never filed any police report.

168.    Michael is the person who called the police on May 4, 2022: to procure an independent investigation into the suspicionless bathroom searches that were happening at Okemos High School.

169.    Elli never accused Cironi, or anyone else, of surveilling an unclad individual, in violation of MCL 750.539j(1)(a) and MCL 750.539a(3).

170.    Ellie never accused Cironi, or anyone else, of any other crime under Michigan law or federal law.

171.    Elli was never informed by any peace officer that the peace officer was conducting a criminal investigation.

172.    And Elli never knowingly and willfully concealed any material fact relating to such criminal investigation from any such peace officer.

173.    Accordingly, Elli did not violate MCL 750.479c(1)(a).

174.   Further, Elli was never informed by any peace officer that the peace officer was conducting a criminal investigation.

175.   And Elli never knowingly and willfully made any statement to any such peace officer that Elli knew to be false or misleading regarding a material fact in such a criminal investigation.

176.   Accordingly, Elli did not violate MCL 750.479c(1)(b).

177.   Further, even assuming, *arguendo*, that there was an alleged crime that was being investigated by Officer Leroy on May 4, 2022 and May 5, 2022, Elli would have been the ***alleged victim*** of any such alleged crime being investigated.

178.   And MCL 750.479c et seq. does not apply to any statement made or action taken by an ***alleged victim*** of the crime being investigated by the peace officer. MCL 750.479c(3)(a).

179.   Accordingly, Elli did not violate MCL 750.479c(1)(b).

180.   Further, Elli did not intentionally make a false report of the commission of a crime or intentionally cause a false report of the commission of a crime to be made.

181.   Elli never accused anyone of committing any crime.

182.   Michael never accused anyone of committing a crime.

183.   Elli never filed a police report to report any crime.

184.   And Michael never filed a police report to report any crime.

185.   Accordingly, Elli did not violated MCL 750.411a(1).

186.   Elli never accused anyone of any criminal behavior.

187.   Elli never accused anyone of any crime.

188.    And Elli never committed any criminal conduct of any kind in relation to the events of this case.

189.    The **Ingham County Prosecuting Attorney** declined to press any criminal charges against Elli for Elli's behavior and conduct and spoken words to Officer Leroy, to any Okemos High School administration officials, and to AL. (Email with declination of charges, **Exhibit 1**).

190.    It is further noteworthy that Officer Leroy is the school resource officer for Okemos High School.

191.    And Officer Leroy was functioning as an investigator and agent for Okemos High School in questioning Elli on May 4, 2022 and May 5, 2022 – not as a law enforcement officer conducting a criminal investigation – further buttressing Elli's position that neither Elli nor Michael were reporting any crime in speaking with Officer Leroy on May 4, 2022 and May 5, 2022.

### School Discipline

192.    Dr. Mark Sharp met with Elli and Pauline and Michael on May 9, 2022.

193.    Elli had a brief conversation with Dr. Mark Sharp on May 9, 2022.

194.    This is the first and only conversation that Elli had with any Okemos School District administration official about the events from May 4, 2022 and May 5, 2022.

### Pre-typed Letter Dated May 6, 2022

195.    During the brief meeting on May 9, 2022, Dr. Mark Sharp hand-delivered a **pre-typed letter dated May 6, 2022**, which suspended Elli for "at least ten days" regarding the above-referenced matter.

196.    The **pre-typed letter dated May 6, 2022** alleged that Elli engaged in intimidation and the filing of a false police report against Cironi, who conducted the suspicionless search of the bathroom on May 4, 2022.

197.    The **pre-typed letter dated May 6, 2022** indicated that Dr. Mark Sharp was recommending that Elli be expelled from the Okemos Public Schools for 180 days.

198.    Okemos High School and its administration made the decision to suspend and recommend expulsion of Elli without even speaking with Elli and giving Elli an opportunity to be heard about the matter.

199.    The **pre-typed letter dated May 6, 2022**  constituted Okemos Public Schools removing Elli from school before any disciplinary hearing was held, despite Elli's continued presence at Okemos High School not being dangerous or disruptive to Okemos High School. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1359 (6th Cir.1996).

200.    The **pre-typed letter dated May 6, 2022** contained material false statements.

201.    The p**re-typed letter dated May 6, 2022** also had an attachment that referenced page 70 of the Okemos Student Code of Conduct and "Verbal Assault Directed Toward an Adult." (Pre-typed Letter dated May 6, 2022 with attachment, **Exhibit 2**).

202.    The reference to verbal assault is a reference to the language contained within the Michigan Revised School Code and MCL 380.1311a(2), which has been declared unconstitutional in *Smith v Mt Pleasant Public Schools*, 285 F Supp2d 987 (ED Mich 2003).

203.    Elli remained suspended and out of school from May 9, 2022 through the school board hearing.

204.    Defendants scheduled a school board hearing for **May 17, 2022**.

205.    Pauline was only notified about the school board hearing regarding Elli because Pauline called the school to ask about any discipline hearing for Elli.

206.    Pauline never received written notification from Defendants about the school board hearing regarding Elli's discipline.

**Board Packet**

207.    The Okemos Public Schools submitted a **board packet** for the Okemos School Board to review in consideration of its recommendation to expel Elli for 180 days.

208.    The **board packet** was delivered to Elli's legal counsel via email on May 17, 2022 at 3:49 p.m.

209.    The **board packet** was 37-pages-long.

210.    The school board hearing for Elli was scheduled for May 17, 2022 at 6:30 p.m.

211.    So the **board packet** was delivered to Elli's counsel less than 3 hours before the school board hearing.

212.    The **board packet** contained material false statements, some of which were pointed out to Defendants' legal counsel prior to the May 17, 2022 school board hearing – as Elli's legal counsel was meeting with Elli and her family and preparing for the school board hearing at 6:30 p.m. and had less than 3 hours to review the 37 page **board packet**. (Board Packet, **Exhibit 3**).

213.    Okemos Public Schools' legal counsel refused to correct the material false information from the **board packet** and refused to correct the record during the school board hearing that took place on May 17, 2022. (Email communication between legal counsel on May 17, 2022, **Exhibit 4).**

214.    The **board packet** contained a letter dated May 9, 2022, which was identical to the **pre-typed letter dated May 6, 2022** that was hand-delivered to Elli and her family on May 9, 2022.

215.    Dr. Mark Sharp purposefully altered the date of the letter dated May 9, 2022 – in anticipation of the school board hearing – to change the date of the letter from May 6, 2022 to May 9, 2022.

216.    The **board packet** also contained a **letter dated May 17, 2022**, drafted by Dr. Mark Sharp, which contained material false statements and constituted a smear campaign to denigrate the character of Elli to the Okemos School Board.

### Board Hearing

217.    Dr. Mark Sharp testified during the school board hearing and gave material false testimony to the Okemos School Board.

218.    Dr. Mark Sharp told the school board that Elli had been charged with a felony crime for filing a false police report. This was provably false.

219.    Elli had not been charged with filing a false police report.

220.    Elli had not been charged with any felony.

221.    And Elli had not been charged with any crime of any kind.

222.    Elli and Pauline and Michael and Elli's father, Brian Block, all attended the school board hearing and provided family support for Elli at the school board hearing.

223.    Elli's current counsel also attended the school board hearing on Elli's behalf.

224.    Elli's counsel presented the Okemos School Board with character letters for Elli and presented testimony from Elli and her family. (Character letters, **Exhibit 5**).

225.    Elli testified and apologized for Elli's conduct.

226.    Elli testified that Elli was not accusing Cironi of any crime.

227.    Elli testified that Elli was never filing any police report against Cironi.

228.    During the school board hearing, Defendants' counsel stated that Elli's words and conduct does not ***"fit neatly"*** into any category that would violate any Okemos student code of conduct or board policy or Michigan law.

229.    During the school board hearing, Elli's counsel pointed out the material false statements in the board packet and in the testimony from Dr. Mark Sharp.

230.    Dr. Mark Sharp refused to correct the record and stood by his malicious lies to the school board.

231.    Dr. Mark Sharp's lack of good faith his ill-will towards Elli was significant in violating Elli's due process rights and Elli's right to fundamental fairness. (Due process is "an abiding sense of fundamental fairness in the relations between government and citizen" and "the sense of fair play…" *Landon v Plascencia*, 459 US 21 (1982); *Lassiter v Department of Social Servs*, 452 US 18 (1981); *Taylor v Kentucky*, 436 US 478 (1978); *Hampton v United States*, 425 US 484 (1976); *Spencer v Texas*, 385 US 554 (1967); *Lisenba v California*, 314 US 219 (1941); *Galvan v Press*, 347 US 522 (1954); ("The touchstone of due process is protection of the individual against arbitrary action of government, [including] the exercise of power without any reasonable justification in the service of a legitimate government objective.") *Collins v City of Harker Heights*, 503 US 115 (1992).

232.    Dr. Mark Sharp's material false statements, through the board packet and oral testimony, tainted the decision-making process of the Okemos School Board. *Wasson v*

*Trowbridge*, 382 F2d 807 (2nd Cir 1967); *Winnick v Manning*, 460 F2d 545 (2nd Cir 1972).

233.    Defendants' legal counsel, and her failure to correct the record and to correct the material false testimony that Dr. Mark Sharp gave to the Okemos Public School Board, further tainted Elli's school board hearing. *Id*.

234.    During the school board hearing, Elli's counsel pointed out that Elli did not commit any assaultive or threatening or intimidating behavior.

235.    Elli's counsel pointed out the vagueness and overbreath problems with the term "verbal assault."

236.    At the school board hearing, the Defendants relied upon **Okemos Board Policy 5144**, a formulated and enacted policy and practice and custom of the Defendants.

237.    **Okemos Board Policy 5144** references verbal assault, which has been declared unconstitutional. *Supra*.

238.    The **Okemos Board Policy 5144** section referencing verbal assault is unconstitutionally vague and overbroad.

239.    Accordingly, this section of **Okemos Board Policy 5144** is unconstitutional, both on its face and as applied to Elli. (Okemos Board Policy 5144, **Exhibit 6**).

240.    It is noteworthy that the **Okemos Board Policy 5144** section addressing "Harassment and intimidation" references only "gestures or verbal, written graphic or physical" acts against students and **not** any such acts against teachers or staff.

241.    The Defendants also referenced variations of the **Okemos Student Code of Conduct**, which was attached with the **pre-typed letter dated May 6, 2022**. *Supra*.

242.    The **Okemos Student Code of Conduct** is a formulated and enacted policy and practice and custom of the Defendants.

243.    The **Okemos Student Code of Conduct** references verbal assault, which is unconstitutional.

244.    The **Okemos Student Code of Conduct** section referencing verbal assault is unconstitutionally vague and overbroad.

245.    Accordingly, this section of **Okemos Student Code of Conduct** is unconstitutional, both on its face and as applied to Elli. (Okemos Student Code of Conduct excerpt, **Exhibit 7**).

246.    Defendants failed to adequately consider any restorative practices or lesser interventions or any alternatives to suspension or expulsion regarding Elli's case.

247.    Defendants failed to adequately consider the mandatory factors contained within MCL 380.1310d – beyond mere lip service and taking into consideration the material false statements in the **board packet** and through the malicious lies via testimony from Dr. Mark Sharp.

248.    Accordingly, Defendants' conduct to expel Elli from Okemos High School was arbitrary and capricious. *Davis v Hillsdale Community Sch Dist*, 226 Mich App 375; 573 NW2d 77 (1997).

249.    At the conclusion of the school board hearing on **May 17, 2022**, the Okemos Public Schools Board of Education adopted a resolution to expel Elli from Okemos Public Schools for 180 days, subject to conditions that could permit Elli to return to the Okemos Public Schools prior to the expiration of the 180 day period – but not until 2023 at the earliest.

250.    Defendants mailed Elli and her family a written resolution letter. (Resolution letter, **Exhibit 8**).

251.    The written resolution letter alleged that Elli "did violate the Michigan Revised School Code, and board policy 5144 Student Code of Conduct."

252.    The written resolution letter does not specify any particular statute from the Michigan Revised School Code and did not specify any particular section of board policy 5144 that Elli is alleged to have violated.

253.    Elli has suffered emotional anguish, humiliation, pain and suffering, and has been in counseling since being expelled by Defendants.

**Lack of Substantial Disruption of Reasonable Forecast of Substantial Disruption**

254.    Elli and her family's complaint to Okemos High School and its administrators regarding the suspicionless bathroom searches was not publicized on any social media or any publicly accessible forum.

255.    There were no postings on Facebook or Twitter or Instagram or Snapchat, or any other social media, regarding Elli and her family's complaint.

256.    Elli and her family's complaint to Okemos High School and its administrators regarding the suspicionless bathroom searches were not publicized to any news media.

257.    Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022 were not publicized on any social media or any publicly accessible forum.

258.    There were no postings on Facebook or Twitter or Instagram or Snapchat, or any other social media, regarding Elli's words and text messages.

259.    Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022 were not publicized to any news media.

260.    Elli and her family's complaint, and Elli's words that she spoke and text messages that she sent and received, were disseminated to a small number of Okemos High School administrators and then to Officer Leroy and Officer McCready with the Meridian Township Police Department.

261.    There exists a very small group of people that know about Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

262.    Okemos High School was never shut down or closed due to Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

263.    Okemos High School classes were never stopped, interrupted, or disrupted due to Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

264.    School instruction did not stop at Okemos High School on May 4, 2022, May 5, 2022, or any other date associated with the events for this case.

265.    There were not calls and emails that flooded into Okemos High School, from concerned parents and students, due to Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

266.    Okemos High School administrators did not conduct meetings with other students, besides the limited interaction with AL and SE, regarding Elli's complaint and

Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

267.     Upon information and belief, Okemos High School administrators did not conduct meetings with other parents, besides Elli's parents, regarding Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

268.     Cironi, who conducted the suspicionless bathroom search, was never suspended from her job duties and was never placed on administrative leave.

269.     Cironi, who conducted the suspicionless bathroom search, was never fired from her job at Okemos High School.

270.     Cironi, who conducted the suspicionless bathroom search, was never criminally investigated, as Officer Leroy was simply performing an investigative role, as an agent for Okemos Public Schools, regarding Elli and her family's complaint and request for an independent investigation about the Defendants' policies, customs, and practices of conducting suspicionless bathroom searches.

271.     Cironi, who conducted the suspicionless bathroom search, never retained any legal counsel, upon information and belief.

272.     Cironi, who conducted the suspicionless bathroom search, never missed any work in response to Elli's complaint and Elli's words that she spoke and text messages that she sent and received on May 4, 2022 and May 5, 2022.

273.     Cironi, who conducted the suspicionless bathroom search, was never charged, arrested, or convicted of any crime relevant to Elli's complaint.

274.    Cironi, who conducted the suspicionless bathroom search, never faced any Title IX investigation and never faced any employment consequences.

275.    Cironi, who conducted the suspicionless bathroom search, never want on medical leave and never missed any school relevant to Elli's complaint.

276.    Given the quick nature of the events from this entire case, starting on the afternoon of May 4, 2022 and ending on the evening of May 5, 2022, and the limited number of officials that know about Elli's words and conduct and text messages, Cironi never faced any reputational damage regarding Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022.

277.    There was no general whisper campaign at Okemos High School regarding Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022.

278.    Okemos High School was not "abuzz" due to Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022.

279.    Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022 constituted a highly contained event amongst Elli, Elli's family, a few Okemos High School administrators, and a school resource officer and two other employees with the Meridian Township Police Department.

280.    Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022 did not contain any derogatory, profane, lewd, or threatening statements against any Okemos High School administrator.

281.   Elli never called for the firing of Cironi or any other Okemos High School administrator.

282.   Elli never degraded the physique or personality of Cironi or any other Okemos High School administrator.

283.   The operation of Okemos High School was not compromised by Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022.

284.   There was no substantial disruption or any reasonable forecast of a substantial disruption regarding Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022.

285.   Elli was not expelled from Okemos Public Schools because of a reasonable forecast of a substantial disruption.

286.   Okemos Public Schools did not conduct any analysis of its diminished ability to punish and regulate off-campus student speech, in the context of any substantial disruption or reasonable forecast of substantial disruption. *Mahanoy*; *Supra*.

287.   Elli's complaint and Elli's words that she spoke and text messages that Elli sent and received on May 4, 2022 and May 5, 2022 did not interfere with the rights of Cironi or any other individual associated with Okemos Public Schools.

288.   Substantial disruption is a ***"demanding standard."***

289.   Relatively minor interruption, including conversations, concern, and a campus being "abuzz" have been rejected as substantial disruption. *JS v Manheim Twp Sch Dist*, 263 A3d 295 (Pa 2021).

290.     Further, a school's own internal investigation into an event has also been rejected as substantial disruption – because "[t]aken to its logical conclusion, under the School District's argument, any off-campus speech which was investigated by a school could be punished as a substantial disruption of the school environment regardless of whether it was protected by the First Amendment." *Id*.

### Legal Violations

291.     Defendants acted outside of the scope of their authority and violated Elli's clearly established rights under the **First Amendment** by expelling Elli from the Okemos Public Schools.

292.     Elli's statements and conduct are protected speech and: (a) were not a **"true threat"** as defined by state and federal law ("encompass[ing] those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals"), (b) were not communication made "for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," and (c) could not possibly be considered a true threat under state and federal law. *Virginia v Black*, 538 US 343 (2003); *People v Gerhard*, COA: 354369 (Mich App 2021), Published June 24, 2021; *In re JP*, 330 Mich App 1; 944 NW2d 422 (2019); *Elonis v United States*, 575 US 723; 135 S Ct 2001 (2015); *People v Osantowski*, 274 Mich App 593; 736 NW2d 289 (2007).

293.     And Elli did not otherwise threaten, intimidate, harass, or coerce any person at Okemos High School, the Okemos Public Schools, or anywhere else.

294.     Elli is not being investigated for, and has not been charged with: (a) terroristic threats under MCL 750.543m and MCL 750.543b(a), (b) transmitting in interstate

commerce "any communication containing any threat…to injure the person of another"

under 18 USC § 875(c), or (c) any other state or federal crime involving threats or

intimidation or any other violation of law.

295.    Elli has not been charged with filing a false police report or with lying to a police

officer under Michigan law.

296.    To the contrary, **the Ingham County Prosecutor specifically declined to charge**

**Elli with any criminal offense**. *Supra*.

297.    Elli's statements were neither defamation nor slander. *Infra*.

298.    And Elli's statements were not any other category of unprotected speech under

state or federal law.

299.    Further, if analyzed under a ***Tinker* and *Mahanoy* framework**, Elli's statements

did not "materially and substantially interfere with the requirements of appropriate school

discipline in the operation of the school. *Tinker*; *supra*. Elli's statements did not: (a)

materially and substantially interfere with the requirements of appropriate discipline in

the operation of Okemos High School and the Okemos Public Schools, (b) materially

disrupt classwork at Okemos High School and the Okemos Public Schools, (c) involve

substantial disorder or invasion of the rights of others at Okemos High School and the

Okemos Public Schools, and (d) give rise to demonstrable factors that would give rise to

any reasonable forecast by Okemos High School and the Okemos Public Schools of

substantial and material disruption. [*LaVine v Blaine Sch Dist*, 257 F3d 981 (9th Cir

2001) (holding that the decision to discipline must be supported by the existence of

specific facts that could reasonably lead school officials to forecast disruption); *Chandler

v McMinnville Sch Dist*, 978 F2d 524 (9th Cir 1992) (denying argument that certain

speech is inherently disruptive and holding instead that finding of substantial and material interference under Tinker must be based on established facts).

300.    Moreover, no actual disruption, no disturbances, and no disorders occurred on the school premises of Okemos High School and the Okemos Public Schools.

301.    "[U]ndifferentiated fear or apprehension of disturbance" is not sufficient.

302.    Substantial and material disruption is a **"demanding standard"** that is not satisfied by "discomfort" or "unpleasantness" from school officials.

303.    Further, in taking into account the *Mahanoy* factors for the diminished ability of schools to regulate off-campus speech, the portions of Elli's speech that occurred off-campus would not subject Elli to punishment by Defendants.

304.    And the conduct of Okemos High School and the Okemos Public Schools' in expelling Elli was not reasonable. *Tinker v Des Moines Independent Community School Dist*, 393 US 503; 89 S Ct 733 (1969); *Mahanoy Area School District v BL*, 141 US 2038 (2021); *Lowery v Euverard*, 497 F 3d 584 (6th Cir 2007); *DB v Lafon*, 217 F Appx 518 (6th Cir 2007).

305.    Further, Defendants committed **First Amendment retaliation** against Elli.

306.    Elli engaged in protected conduct (in both **her complaint** about the warrantless and suspicionless bathroom searches and in **her words** from May 4, 2022 and May 5, 2022).

307.    Defendants retaliated against Elli for engaging in protected conduct.

308.    And Defendants' decision was motivated by Elli's protected conduct. *Thaddeus-X v Blatter*, 175 F 3d 378 (6th Cir 1999). This violated Elli's clearly established rights.

309.   Further, Defendants had an **official municipal policy that was unconstitutional on its face and as applied** (verbal assault in Okemos Board Policy 5144 and Okemos Student Code of Conduct page 70/77), had an **unofficial custom and practice that was unconstitutional – with actual or constructive knowledge from those at the policy making level** (suspicionless bathroom searches, First Amendment retaliation, and suspending and expelling students in violation of their First Amendment rights), acted with **deliberate indifference** and **failed to train and supervise its employees where there was an obvious need to train and supervise** (in First Amendment law and precedent and Fourth Amendment law and precedent, and failed to provide proper procedure and due process standards, in handling student discipline). Further, the **decisions or acts of the final policy makers** for this case, even a single decision to take unlawful action by such municipal policy makers, are unconstitutional and give rise to liability for Defendants. *Monell v City of New York City Dep't of Social Servs*, 436 US 658 (1978); *Pembaur v City of Cincinnati*, 475 US 469 (1986); *City of Canton v Harris*, 489 US 378 (1989); *Burgess v Fischer*, 735 F3d 462 (6th Cir 2013). This violated Elli's clearly established rights.

310.   Further, in the course of permanently expelling Elli from Okemos Public Schools, Defendants violated Elli's **procedural due process rights** and her clearly established rights. Elli has a protected property interest in her continued education. Elli has a protected liberty interest her good name, reputation, honor, and integrity. And Elli can show a stigma, plus her protected property interest, in her continuing education. *Goss v Lopez*, 419 US 565; 95 S Ct 729 (1975); *Flaim v Med Coll of Ohio*, 418 F 3d 629 (6th Cir 2005); *Doe v University of Cincinnati*, 872 F 3d 393 (6th Cir 2017); *Doe v Miami*

*University*, 882 F 3d 579 (6th Cir 2018); *Jaksa v Regents of Univ of Mich*, 597 F Supp 1245 (ED Mich 1984); *J Endres v Northeast Ohio Med Univ*, 938 F3d 281 (6th Cir 2019); *Wisconsin v Constantineau*, 400 US 433; 91 S Ct 507 (1971); *Paul v Davis*, 424 US 693 (1976); *Miskowski v Martin*, 57 Fed Appx 246 (6th Cir 2003).

311.    Elli has been prejudiced by the decisions of Defendants and by Defendants' continuing violation of Elli's rights; and Elli's information and defense to the allegations against her would have led to a different outcome but for Defendants' violation of Elli's rights. *Baynes v Cleland*, 799 F 3d 600 (6th Cir 2015); *Brosseau v Haugen*, 543 US 194 (2004); *Mendoza-Garcia v Barr*, 918 F 3d 498 (6th Cir 2019); *Sako v Gonzales*, 434 F 3d 857 (6th Cir 2006). This violated Elli's clearly established rights.

312.    Moreover, Defendants: (a) failed to provide Elli with the appropriate notice of the allegations against Elli, including written notice of the precise words or actions that Elli took to which Defendants viewed as allegedly threatening or intimidating, (b) failed to identify and produce any accuser of any alleged misconduct against Elli, through any written statements of any actual accuser or oral testimony of any actual accuser, and (c) provided materially false information against Elli as part of a board packet that was submitted to the Okemos School Board prior to adjudication of Elli's disciplinary hearing, in violation of fundamental fairness and due process for Elli, which tainted the proceedings. *Supra*; *Doe v University of Cincinnati*, 872 F 3d 393 (6th Cir 2017); *Doe v Baum*, 903 F 3d 575 (6th Cir 2018); *Newsome v Batavia Local Sch Dist*, 842 F 2d 920 (6th Cir 1988). This violated Elli's clearly established rights.

313.    Further, Defendants violated Elli's **substantive due process** rights by depriving Elli of her constitutionally protected right to continued enrollment at Okemos Public

Schools. *Megenty v Stenger*, 27 F 3d 1120 (6th Cir 1994); *Regents of Univ of Mich v Ewing*, 474 US 214; 106 S Ct 507 (1985); *Bd of Curators v Horowitz,* 435 US 78; 98 S Ct 948 (1978).

314.    Defendants deprived Elli of her protected property interests: in her continuing education and in a transcript unmarred by an expulsion on her record. Defendants' decision to expel Elli was done in violation of Elli's constitutionally protected First Amendment rights, was patently unreasonable, and was disproportionate to any alleged offense that Defendants assert that Elli committed. And Defendants' decision to expel Elli was arbitrary and capricious, not supportable on any rational basis, was a willful and unreasoning action, was without consideration and in disregard of the facts and circumstances of Elli's case, and shocks the conscience. *Valot v Southeast Local Sch Dist Bd of Educ*, 107 F 3d 1220 (6th Cir 1997); *Silver v Franklin Twp Bd of Zoning Appeals*, 966 F 2d 1031 (6th Cir 1992); *Pearson v City of Grand Blanc*, 961 F 2d 1211 (6th Cir 1992) (quoting *Stevens v Hunt*, 646 F 2d 1168 (6th Cir 1981); See also *Ala & Coushatta Tribes v Big Sandy Sch Dist*, 817 F Supp 1319 (ED Tex 1993).

315.    Further, there is no sufficient post-deprivation remedy sufficient to absolve Defendants of its constitutional violations in this case. *Parratt v Taylor*, 451 US 527; 101 S Ct 1908 (1981).

316.    Further, the **Board Policy 5144** section referencing verbal assault and the **Student Code of Conduct** section referencing verbal assault are **unconstitutional policies, procedures, customs, and practices**, as applied to Elli and facially.

317.    Further, Defendants' failure to adequately consider any restorative practices or lesser interventions or any alternatives to suspension or expulsion regarding Elli's case –

and Defendants' failure to adequately consider the mandatory factors contained within

MCL 380.1310d – was **arbitrary and capricious**. *Davis v Hillsdale Community Sch*

*Dist*, 226 Mich App 375; 573 NW2d 77 (1997).

318.    Further, Defendants **breached its contract** with Elli, breached any implied

contract with Elli, and would be bound by promissory estoppel regarding its decision to

conduct a warrantless and suspicionless search of Elli and its permanently expel Elli – in

breach of the Okemos Student Handbook and Student Code of Conduct, pages 70, 89,

and 92. *Anderson v Vanderbilt Univ*, 450 F App'x 500 (6th Cir 2011); *Faparusi v Case W*

*Reserve Univ*, 711 F App'x 269 (6th Cir 2017).

319.    Further, Defendants violated Elli's **freedom of speech rights under the**

**Michigan Constitution of 1963. Article I, § 5.**

320.    Further, Defendants violated Elli's **Fourth Amendment rights** in the

suspicionless searches of Elli in the school bathroom, which occurred in April 2022 and

May 2022.

321.    Further, Defendants violated Elli's **right to be free from unreasonable searches**

**and seizures Michigan Constitution of 1963. Article I, § 11.**

322.    Further, Defendants violated Elli's **rights to due process under Michigan**

**Constitution of 1963. Article I, § 17.**

323.    Further, Defendants violated **Pauline's rights to determine and direct the care,**

**teaching, and education of her daughter, Elli, in violation of MCL 380.10.**

324.    This case seeks to protect and vindicate statutory and fundamental, clearly

established constitutional rights.

325.    Elli brings a civil rights action under the First Amendment and Fourth

Amendment and Fourteenth Amendment to the United States Constitution and 42 USC §

1983 and for other statutory and constitutional violations, challenging Defendants' acts,

policies, practices, customs, and procedures, which deprived Elli of her rights.

326.    Elli brings this action for **money damages in the amount of 3 million dollars** –

for *compensatory* and *punitive damages* – for Elli's sustained and continued injuries,

including but not limited to, pain and suffering, mental anguish, fright, shock,

embarrassment, humiliation, mortification, damage to reputation, disruption of personal

life, loss of enjoyment of the ordinary pleasures of living, medical conditions, post

traumatic stress, and other damages known and unknown, as well as the following:

A. **prospective injunctive and declaratory relief** compelling Defendants to comply

   with federal law and to end a continuing and ongoing violation of federal law and

   Elli's clearly established rights, including, but not limited to, violation of Elli's

   First Amendment rights and violation of Elli's Fourth Amendment rights. *Ex*

   *Parte Young*, 209 US 123; 28 S Ct 441 (1908); *S & M Brands, Inc v Cooper*, 527

   F 3d 500 (6th Cir 2008)

B. a **declaration** that Defendants acted unconstitutionally and violated Elli's clearly

   established rights by Defendants' continuing and ongoing violation of federal law,

   including, but not limited to, violation of Elli's First Amendment rights and

   violation of Elli's Fourth Amendment rights

C. **a declaration** that the section of the Board Policy 5144 and Student Code of

   Conduct dealing with verbal assault be declared unconstitutional

D. **immediate reinstatement** of Elli to Okemos Public Schools - to allow Elli to return to Okemos Public Schools and complete her diploma at Okemos Public Schools, which is prospective in nature. *Carten v Kent State University*, 282 F 3d 391 (6th Cir 2002)

E. for a complete **expungement** of any reference to an expulsion, and any events related to those actions, from Elli's transcript and complete records and student file

F. for **changes** to the **policies, practices, customs, and procedures** of Defendants regarding punishing students for constitutionally protected speech

G. for **changes** to the **policies, practices, customs, and procedures** of Defendants regarding warrantless and suspicionless bathroom searches

H. for **changes** to the **policies, practices, customs, and procedures** of Defendants regarding conducting student disciplinary proceedings and Defendants' ongoing and continuing violation of federal law. *MacDonald v Vill of Northport, Mich*, 164 F 3d 964 (6th Cir 1999) – by compelling Defendants' to take action that includes, but is not limited to: (a) providing the appropriate notice of the allegations against a student, including written notice of the precise words or actions that the student took to which Defendants viewed as allegedly threatening or intimidating, (b) identify and produce any accuser of any alleged misconduct against a student, through any written statements of any actual accuser or oral testimony of any actual accuser, and (c) stop the behavior or providing materially false information against a student as part of a board packet that is submitted to the Okemos School Board prior to adjudication of a student's disciplinary

hearing, in violation of fundamental fairness and due process for the student and which taints the proceedings. Implementing such changes will not impose undue fiscal and administrative burdens upon Defendants. *Matthews v Eldridge*, 424 US 319 (1976)

I.  for an award of reasonable costs of litigation, including **attorney fees and costs**, pursuant to 42 USC § 1988 and other applicable law

### JURISDICTION AND VENUE

327.  This case arises under the Constitution and laws of the United States and of the State of Michigan.

328.  Jurisdiction is conferred on the Honorable Court pursuant to 28 USC § 1331, 28 USC § 1343, 42 USC § 1983, 42 USC § 1985, 42 USC § 1986, 42 USC § 1988, and other Federal and State laws and regulations – to redress violations of federal statutes and state law.

329.  This case arises from events that occurred in Ingham County, which is in the Southern District. 28 USC § 102(b).

330.  The Honorable Court has subject matter jurisdiction pursuant to Article III of the United States Constitution, 28 USC § 1331 and 28 USC § 1343(a)(1), (2), (3), and (4).

331.  Declaratory relief and injunctive relief is authorized pursuant to the Declaratory Judgment Act, 28 USC § 2201 and 28 USC § 2202, by Rule 57 and Rule 65 of the Federal Rules of Civil Procedure, by the All Writs Act, 28 USC § 1651, and by the general legal and equitable powers of this court.

332.    The Honorable Court has supplemental jurisdiction regarding state law claims pursuant to 28 USC § 1367 because the state claims arise out of the same nexus of facts and events.

333.    Elli's claims for damages are authorized pursuant to 42 USC § 1983, 42 USC 2000d-7, and by the general legal and equitable powers of this court.

334.    The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

335.    Venue is appropriate pursuant to 28 USC § 1391. The individual defendants are residents in the State in which this district is located and a substantial part of the events or omissions giving rise to the claims occurred in this district.

336.    Elli's claims are timely filed within the applicable statute of limitations.

## PARTIES

337.    Elli is a citizen of the United States, a citizen of the State of Michigan, and is domiciled in Ingham County, Michigan. Elli was a student at Okemos High School and was an academic sophomore prior to her expulsion from Okemos High School. Elli's expected graduation date was May 2024.

338.    Pauline is Elli's biological mother and Elli's next friend for all purposes relating to this action. Pauline is domiciled in Ingham County, Michigan.

339.    Defendant, Okemos Public Schools, is a municipal entity, which is located in Ingham, Michigan. Okemos Public Schools is established and organized under, and pursuant to, the laws of the State of Michigan, with the authority to sue and be sued in its own name. Okemos Public Schools has functions that include, but are not limited to, organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Okemos Public Schools is responsible for the

managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Okemos Public Schools acted and continues to act under color of state law. Okemos Public Schools violated Elli's clearly established constitutional rights.

340.     Defendant, Okemos Public Schools Board of Education, is a municipal entity, which is located in Ingham, Michigan. Okemos Public Schools Board of Education is established and organized under, and pursuant to, the laws of the State of Michigan, with the authority to sue and be sued in its own name. Okemos Public Schools Board of Education has functions that include, but are not limited to, organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Okemos Public Schools Board of Education is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Okemos Public Schools Board of Education acted and continues to act under color of state law. Okemos Public Schools Board of Education violated Elli's clearly established constitutional rights.

341.     Defendant, Dean Bolton, is an Okemos Public Schools Board member, and an adult resident of the State of Michigan. Bolton is being sued in his individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Bolton was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of his employment. Bolton is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff,

counselors, and teachers at Okemos High School. Bolton is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Bolton acted under color of law. Hood violated Elli's clearly established constitutional rights.

342. Defendant, Jayme Taylor, is an Okemos Public Schools Board member, and an adult resident of the State of Michigan. Cavanaugh is being sued in her individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Cavanaugh was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of her employment. Cavanaugh is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Cavanaugh is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Cavanaugh acted under color of law. Cavanaugh violated Elli's clearly established constitutional rights.

343. Defendant, Mary Gebarda, is an Okemos Public Schools Board member, and an adult resident of the State of Michigan. Gebarda is being sued in her individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Gebarda was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of her employment. Gebarda is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Gebarda is responsible for the

managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Gebarda acted under color of law. Gebarda violated Elli's clearly established constitutional rights.

344.    Defendant, Melanie C. Lynn, is an Okemos Public Schools Board member, and an adult resident of the State of Michigan. Lynn is being sued in her individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Lynn was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of her employment. Lynn is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Lynn is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Lynn acted under color of law. Lynn violated Elli's clearly established constitutional rights.

345.    Defendant, John J. Hood, is the Superintendent of Okemos Public Schools. Hood is an adult resident of the State of Michigan. Hood is being sued in his individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Hood was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of his employment. Hood is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Hood is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and

practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Hood acted under color of law. Hood violated Elli's clearly established constitutional rights.

346.     Defendant, Andrea Hallead, is the Interim Principal of Okemos Public Schools. Hallead is an adult resident of the State of Michigan. Hallead is being sued in her individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Hallead was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of her employment. Hallead is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Hallead is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Hallead acted under color of law. Hallead violated Elli's clearly established constitutional rights.

347.     Defendant, Allison Cironi, is the Assistant Principal of Okemos Public Schools. Cironi is an adult resident of the State of Michigan. Cironi is being sued in her individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Cironi was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of his employment. Cironi is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Cironi is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies,

customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Cironi acted under color of law. Cironi violated Elli's clearly established constitutional rights.

348.    Defendant, Mark Sharp, is the Assistant Principal of Okemos Public Schools. Sharp is an adult resident of the State of Michigan. Sharp is being sued in his individual and official capacity for declaratory and injunctive relief and for money damages. At all times relevant, Sharp was an agent or employee of Okemos Public Schools and acted or failed to act within the scope, course, and authority of his employment. Sharp is responsible for the organizing, teaching, operating, staffing, training, and supervising the staff, counselors, and teachers at Okemos High School. Sharp is responsible for the managing, adopting, implementing, and enforcing of all school procedures, policies, customs, and practices, including, but not limited to the Okemos Student Code of Conduct and the Okemos Board policy. At all times relevant, Sharp acted under color of law. Sharp violated Elli's clearly established constitutional rights.

## CONTINUED STATEMENT OF FACTS

### Individuals Involved

349.    There are **9 main players** that are involved in Elli's student discipline case: (i) Elli, (ii) Pauline, (iii) Michael (iv) Allison Cironi ("Cironi"), (v) Andrea Hallead ("Hallead"), (vi) Mark Sharp ("Sharp"), (vii) Officer Leroy, (viii) AL, and (ix) SE.

350.    Pauline is Elli's mother.

351.    Michael is Elli's stepfather.

352.    Cironi is an assistant principal at Okemos High School.

353.    Hallead is an interim principal at Okemos High School.

354.    Sharp is an interim principal at Okemos High School.

355.    Officer Leroy is the school resource officer and a Meridian Township Police Department officer.

356.    AL is a fellow student at Okemos High School.

357.    SE is Elli's friend and a fellow student at Okemos High School.

**Elli's Background**

358.    In January 2022, Elli was a sophomore at Okemos High School.

359.    Elli was an above-average student.

360.    Elli had friends at school and socialized with fellow students and friends outside of the school setting. Elli did not exhibit any antisocial behaviors.

361.    Elli did not have any individual education plan (IEP) or 504 plan.

362.    In the midst of the global pandemic, Elli had reduced her extracurricular activities.

363.    But Elli had previously been active in volleyball and soccer and gymnastics and softball and basketball and skateboarding.

364.    Elli also enjoyed playing piano and dancing.

365.    Elli had no behavioral disciplinary history at the Okemos Public Schools, where Elli attended school since the first grade.

366.    Elli had no criminal history of any kind.

367.    Elli had no alcohol abuse issues or issues with abusing controlled substances.

368.    Elli had no mental health history or issues that would render Elli a threat to herself or others.

**January 2022 Event**

369.    In January 2022, Elli was the victim of targeted bullying at Okemos High School.

370.    On January 26, 2022, Elli found writings on the bathroom stalls at Okemos High School, in two different bathrooms.

371.    One bathroom stall had writing that said, "Elli Block is a whore."

372.    The other bathroom stall had writing that said, "Drop out and become a stripper" with reference to Elli.

373.    Elli texted Pauline about the bullying behavior. Pauline was at work at the time, so Michael came to the school to speak with school administrators about the bullying behavior.

374.    Michael and Elli both met with Sharp.

375.    Sharp apologized to Elli and had maintenance come right away to paint over the bathroom vandalism.

376.    However, no one asked Elli how she felt about the bullying and who may have been the perpetrator of the bullying.

377.    There was zero investigation into the bullying and no attempt to try and locate and punish the perpetrator, which also violated Defendants' own student code of conduct.

378.    Elli knew that Okemos High School had cameras in the hallways and Okemos High School administrators could have conducted an investigation into locating and punishing the perpetrator of the bullying behavior towards Elli.

379.    Elli felt traumatized by the bullying.

380.    And Elli felt like the Okemos High School administration did not care about her feelings and had an inadequate response to her bullying event.

**April 2022 Event**

381.    On April 8, 2022, Elli was in the school bathroom at Okemos High School during the school day.

382.    After leaving the school bathroom, Cironi forced Elli to go to the school office.

383.    Despite no individualized, reasonable, articulable suspicion that Elli had violated any law or student code of conduct/board policy, three different school administrators searched Elli.

384.    Elli was forced to show her waistband, pull up her pants, and turn her pockets inside out.

385.    This was a suspicionless search of Elli, in violation of Elli's Fourth Amendment rights.

386.    Elli was not vaping on April 8, 2022.

387.    Elli did not have any vape pen or any other contraband on her when school administrators unlawfully searched Elli.

388.    School administrators also looked through Elli's personal binder, without proper cause or justification, for an additional violation of Elli's Fourth Amendment rights.

389.    To Elli's knowledge, the school administrators did not search any of the other female students that were in the bathroom with her on April 8, 2022.

390.    Elli felt targeted by school administration and that her privacy was invaded on April 8, 2022.

391.    And Elli felt humiliated about being searched by three Okemos administrators.

392.    So Elli told Michael about the suspicionless bathroom search.

393.    In response, on or about April 13, 2022, Michael wrote an email to Sharp to file a formal complaint about the suspicionless search that occurred with Elli on April 8, 2022.

394.    Sharp called Pauline on April 14, 2022 – to discuss Michael's email.

395.    Pauline was working a 12-hour work shift on April 14, 2022.

396.    So Michael called Sharp back to discuss the suspicionless search of Elli and the bathroom search policy for Okemos High School and the Okemos Public Schools.

397.    After speaking with Sharp, Michael was dissatisfied with the explanation that Sharp gave regarding the suspicionless search of Elli on April 8, 2022; and Michael was dissatisfied with the explanation that Sharp gave regarding the bathroom search policy for Okemos High School and the Okemos Public Schools.

398.    After the April 8, 2022 event, Elli noticed that school administrators, including Cironi, often followed Elli into the school bathroom, without proper cause or justification.

**May 2022 Event**

399.    On May 4, 2022, in the early afternoon, Elli was present at Okemos High School for school.

400.    Elli had just finished lunch and was going into the school bathroom with Elli's friend, SE.

401.    Elli and SE went into the same stall together – the third stall back out of the four stalls in the school bathroom (4th stall back is a handicap access stall).

402.    Elli and SE wanted to talk in private in the school bathroom.

403.    AL, a fellow classmate to Elli and SE, had been saying mean things about SE.

404.    And Elli and SE wanted to speak in private in the school bathroom.

405.   Neither Elli nor SE was vaping in the bathroom on May 4, 2022.

406.   Neither Elli nor SE had any vape pen or contraband on them in the bathroom on May 4, 2022.

407.   While in the same bathroom stall together, SE stood up on the toilet seat, in an effort to conceal her feet from being seen in the bathroom stall.

408.   Elli and SE knew that they were not doing anything wrong or in violation of the student code of conduct/board policy.

409.   Elli and SE did not want to be searched.

410.   Elli and SE just wanted privacy to have a conversation.

411.   AL followed Elli and SE into the bathroom.

412.   AL was standing outside of the third stall where Elli and SE were located.

413.   Cironi came into the school bathroom.

414.   Cironi asked how many students were in each bathroom stall.

415.   AL answered, "one," which AL knew was untrue. [to Elli's knowledge, AL was never punished for being untruthful to Okemos High School administrators on May 4, 2022]

416.   Elli believed that Elli saw Cironi through the cracks of the bathroom stall.

417.   Elli did not actually see Cironi look underneath Elli's specific bathroom stall.

418.   After Cironi left the bathroom, Elli spoke with AL in person.

419.   AL told Elli that Cironi walked down to the third stall (past the sinks) and looked under the bathroom stall where Elli and SE were located.

420.   Elli felt that her privacy was invaded again.

421.   Elli felt like school administrators were targeting Elli.

422.    Elli was upset and frustrated.

423.    Elli texted Pauline about the suspicionless bathroom search, as it is undisputed that Elli was not vaping or fighting or doing anything unlawful or suspicious in the bathroom on May 4, 2022.

424.    Pauline communicated to Elli that Pauline would come to the school to speak with school administration about the suspicionless bathroom searches that were happening to Elli.

425.    Later in the afternoon, Elli and AL texted back and forth about the suspicionless bathroom search.

426.    Elli texted, "annabelle…my moms heading to the school…lmao can you tell me everything."

427.    AL texted, "Yeah…Cironi came into the bathroom and asked me how many people were in the stall…I said one…So she knelt down to look."

428.    Elli texted, "like all the way."

429.    AL texted, "And then couldn't see so came closer…Then still couldn't see and left…Like crouched down…Like squat."

430.    Elli texted, "I couldn't see her face or anything."

431.    AL texted, "Yeah but there were like ten girls that can confirm that happened."

432.    Elli texted, "okay."

433.    AL texted, "Let me know what happens…lmao."

434.    Elli texted, "okay i will."

435.    AL then texted to Elli, "What happened with ur mom coming."

436.    Elli texted, "she's coming soon."

437.    Later, Elli texted AL, "ceroni lied to me mom…she said she didn't even go passed the sinks."

438.    AL texted back in response, "?...Oml…Wow."

439.    Elli interpreted AL's response to mean: Cironi did, in fact, go past the sinks when searching the school bathroom on May 4, 2022.

440.    Elli texted to AL, "yeah she was literally talking to you and you were right outside my stall."

441.    AL texted, "That's so annoying."

442.    Elli texted, "my step dad is calling the cops."

443.    Later, Elli texted, "literally officer Leroy intercepted the call and was making a bunch of excuses."

444.    AL responded, "no way…What did he say." (Text messages, **Exhibit 9**).

445.    All of the above-referenced text messages from **Exhibit 9** occurred between Elli and AL on May 4, 2022.

446.    Elli left Okemos High School and went home with her family in the early evening of May 4, 2022.

447.    Elli and her family were upset and frustrated by what happened.

448.    Pauline and Michael had gone to Okemos High School on the afternoon of May 4, 2022 and spoken with Sharp about the bathroom search of Elli.

449.    Sharp had apologized to Pauline and Michael.

450.    Sharp told Pauline and Michael that Sharp would look into the matter.

451.    Sharp told Pauline and Michael that Sharp would speak with Cironi about the incident and that Cironi would call Pauline.

452.    Pauline and Michael felt as if Sharp was blowing them off and discounting their concerns.

453.    Pauline and Michael were extremely dissatisfied with Sharp's response.

454.    Cironi called Pauline on the telephone on the afternoon of May 4, 2022.

455.    Cironi told Pauline that Cironi was going her daily check, did not go past the sinks in the bathroom, and bent down to look underneath the stall and count the number of feet per stall.

456.    Pauline told Elli about the conversation with Cironi.

457.    Elli believed that Cironi was being untruthful to Pauline – based upon Elli's verbal conversation with AL and based upon the text messages exchanged between Elli and AL. *Supra*.

458.    Pauline and Michael were dissatisfied with the school response and the lack of clarity regarding suspicionless searches.

459.    Pauline and Michael had also asked Sharp about whether it was a violation of any student code of conduct/board policy to have two students in a bathroom stall at one time. Sharp failed to adequately answer that question.

460.    Pauline and Michael felt that Okemos High School administration was blowing off their concerns about the suspicionless searches that were occurring at Okemos High School.

461.    Pauline and Michael wanted an independent investigation done regarding the suspicionless searches that were occurring at Okemos High School.

462.    Accordingly, Michael called the police to initiate an independent investigation into the suspicionless bathroom searches that were occurring at Okemos High School.

463. On the early evening of May 4, 2022, Michael called the Meridian Township Police Department.

464. Michael spoke with a staff member of the Meridian Township Police Department and told the staff member why Michael was calling.

465. Officer Leroy, the school resource officer for Okemos High School, learned about Michael's call to the Meridian Township Police Department.

466. Officer Leroy intercepted the call and complaint from Michael about the suspicionless searches that were occurring at Okemos High School.

467. On the evening of May 4, 2022, Officer Leroy called Michael's cell phone.

468. Michael was at home with Elli when Officer Leroy called.

469. Neither Michael nor Elli recorded their conversation with Officer Leroy on May 4, 2022.

470. Neither Michael nor Elli took contemporaneous notes of their conversation with Officer Leroy on May 4, 2022.

471. Neither Michael nor Elli were preparing for litigation in having their conversation with Officer Leroy on May 4, 2022.

472. Michael and Elli were participants in a conversation with Officer Leroy.

473. Plaintiffs present the Meridian Township Police Department report as Officer Leroy's contemporaneous recitation of the conversation that occurred with Michael and Elli on the evening of May 4, 2022.

474. Plaintiffs do not present the police report as acknowledged facts about what was said or not said by any participant in any conversation on May 4, 2022 – merely as Officer Leroy's contemporaneous record of Officer Leroy's recitation of this event.

475.    Officer Leroy states that **<u>Michael explained</u>**: Elli was in the school bathroom when Cironi  came into the bathroom. Cironi asked other girls standing in the bathroom how many girls were in the stall. Cironi began to look under the stall doors. Elli was trying to urinate when Cironi looked under the stall door at Elli. Elli could see Cironi and locked eyes. Michael would have to clarify whether Cironi actually looked under the bathroom stall and made eye contact with Elli.

476.    Officer Leroy states that **<u>Elli explained:</u>** Elli was in the bathroom in a stall when Cironi walked into the bathroom. Elli could hear Cironi ask the girls in the bathroom how many girls were in the stall. Elli said that Elli's friend told Cironi it was just Elli in the stall and that Cironi looked under the stall anyway. Elli felt violated and did not think that it was right for Cironi to do that. Elli stated that Elli did not see Cironi and was going on the information that Elli's friend provided to Elli. (Police Report, **Exhibit 10**).

### Officer Leroy's Limited School Investigation

477.    On the morning of May 5, 2022, Officer Leroy spoke with Andrea Hallead, who was acting principal.

478.    Hallead told Officer Leroy that Cironi would not make a statement without a lawyer, despite the fact that no one was accusing Cironi of any crime or of any criminal conduct.

479.    Officer Leroy learned that Sharp has been speaking with AL, who was in the bathroom.

480.    Officer Leroy spoke with AL, and AL produced text messages between Elli and AL from May 4, 2022 and May 5, 2022.

481.    In the May 5, 2022 text messages, Elli says to AL: "annabelle answer…I would need you as a whiteness (sic)…there's j one problem…I said that she was all the way outside of my stall when she looked…so I need you to lie ig because when I j saw you, you said she was by the sinks when she looks but the objective here is to get her in trouble okay?." (Text message, **Exhibit 11**).

482.    Elli left school early on May 5, 2022.

483.    Michael emailed the school administrators on May 5, 2022.

484.    Michael's email was written to "Administrators of Okemos Highschool (sic)."

485.    Michael's email was sent to Sharp, Cironi, Hallead, and the Okemos School Board.

486.    Michael's email requested clarity on the policy for searching school bathrooms.

487.    Michael's email discussed Elli being unlawfully searched in April 2022 and May 2022.

488.    Michael's email discussed the Fourth Amendment and an expectation of privacy.

489.    Michael's email never mentioned Cironi by name and never mentioned the word "crime" or any variant on the word "crime."

490.    Michael's email never accused anyone of any crime or criminal conduct. (Michael's email, **Exhibit 12**).

491.    Officer Leroy had called Michael on **May 5, 2022**, where Officer Leroy reports that Michael said that Elli told Michael that Cironi stuck Cironi's head under the stall door and locked eyes with Elli.

492.    Elli gave her police station interview with Officer Leroy on the evening of May 5, 2022.

63

493.    Per Officer Leroy, **Elli stated:** Elli said that Elli was in the stall trying to urinate when Elli could hear Cironi talking to other girls in the bathroom. Elli said Cironi came into the bathroom and was standing in front of the stalls in between Elli's stall and the stall next to Elli. Cironi bent down in front of Elli's stall to look under it and Elli could see Cironi's hair from underneath the door. Elli denied ever locking eyes with Cironi and denied ever saying that to Michael. Cironi checked the big stall next to Elli and then left the bathroom. Elli reported being alone in the bathroom stall. Elli admitted to asking Elli's two friends to lie for Elli because Elli had already told Elli's parents what happened. Elli had deleted the message that Elli sent AL in the text thread but a screenshot photograph was in Elli's pictures on Elli's phone. Pauline found the message in Elli's phone stating that the objective is to get Cironi in trouble. **Exhibit 10**; *supra*.

494.    Officer Leroy's police report stated that "Cironi wished to prosecute for filing a false police report and this report will be forwarded to the Ingham County Probate Court."

495.    That is noteworthy because Elli never filed any police report. And Elli never committed any crime, as **confirmed by the Ingham County Prosecutor's Office**.

496.    Further, police reports with warrant requests get forwarded to the local prosecutor's office and not to a probate court. The prosecutor is the one that determines whether to file a petition in the juvenile court.

497.    Elli remained out of school from Thursday, May 5, 2022 through Monday, May 9, 2022.

498.    On Friday, May 6, 2022, Michael emailed the school administrators to apologize and to indicate that Michael had things wrong regarding the description of what happened in the school bathroom on May 4, 2022.

**Meeting With Sharp**

499.    Elli and Pauline and Michael met with Sharp for approximately 20 minutes on Monday, May 9, 2022, where Sharp hand-delivered the **pre-typed letter dated May 6, 2022.**

500.    The **pre-typed letter dated May 6, 2022** was written by Sharp and contained malicious lies – a pattern of behavior for Sharp.

501.    Sharp wrote, "[Elli and another girl] appeared to be vaping." This is totally false. Cironi's own written statement never said anything about Elli appearing to be vaping. This is a false statement. Elli did not appear to be vaping in the school bathroom on May 6, 2022.

502.    Further, Sharp wrote, "Cironi checked the bathroom, but did not know two girls were in a stall." On one hand, Sharp writes "[t]hey appeared to be vaping." In the next sentence, Sharp writes that Cironi does not know two girls were in a stall. Sharp writes with glaring inconsistencies and lies.

503.    Sharp wrote, "Elli decided to text her parents in an attempt to get Ms. Cironi in trouble." This is totally false. Elli felt that her constitutional rights were being violated. Elli's legal counsel agrees under *Knight* and *TLO*. But it is a total lie to say that Elli was texting her parents to try and get Cironi in trouble. Elli texted her parents out of concern for Elli's privacy and her legal rights.

504.    Sharp wrote, "Elli made up a story saying Ms. Cironi looked into the stall while Elli was going to the bathroom." This is a lie. Elli reported information that was given to her by AL, through an in person conversation and through text messages. Elli recited what Elli was told, how Elli interpreted what Elli was told, and what Elli experienced. Elli did not make up a story to get Cironi in trouble. This is false.

505.    Sharp wrote, "Elli and her parents decided to file a false police report which accused Ms. Cironi of criminal wrongdoing." This is a lie. Elli never filed any police report. Michael called the police to obtain an independent investigation regarding the suspicionless searches happening at Okemos High School. Neither Michael nor Elli were reporting any crime or accusing Cironi of criminal wrongdoing. This is false.

506.    Sharp wrote, "Elli actively encouraged at least one other student to lie to administration and police in an attempt to get Mrs. Cironi in legal trouble." This is false. While Elli wrote AL to "lie ig," Elli was not trying to get Cironi in legal trouble. Elli was not alleging any crime or any conduct that would get Cironi in legal trouble. Elli never thought or said the word "legal" to anyone relevant to this event.

**Board Packet**

507.    Prior to the school board hearing on May 17, 2022, Defendants emailed a **board packet** to Elli's legal counsel.

508.    The **board packet** contained malicious lies – all written by Sharp, upon information and belief.

509.    The **board packet** stated that Elli "brought…allegations against [Cironi] to [Cironi's] workplace" and that Elli "[filed] a false police report accusing Mrs. Cironi of criminal wrongdoing." As described above, Elli did not file a false police report. Elli did

not file any police report. The **Ingham County prosecutor declined criminal charges** against Elli. And Elli never accused Cironi of any criminal wrongdoing. This is false.

510.     The **board packet** stated, "#4 Intimidation: (MCL 380.1310). In addition, Elli has been charged with filing a false police report. Officer Brian LeRoy, Meridian Township Police Officer, has documented and sent the charges to the Probate Court.  (Case #2292601878). The charges brought against her are a felony." Besides properly identifying Officer Leroy and the police incident number, everything about this statement is completely false. (a) Elli had not been charged with filing a false police report on May 17, 2022. Elli has never been charged with filing a false police report [*the Ingham County Prosecutor declined to charge Elli].* (b) Michigan Court Rule (MCR) 3.900 et seq governs proceedings involving juveniles. Under MCR 3.903(A)(4), "'court' means the family division of the circuit court" when used in subchapter 3.900 of the Michigan Court Rules. Juvenile delinquency cases, or cases involving allegations of criminal misconduct against juveniles, are filed in the family division of the circuit court, not in probate court. (c) There were no felony charges ever brought against Elli. This is false. (d) MCL 380.1310 is the section of the Michigan Revised School Code that addresses physical assault against another pupil. MCL 380.1310(3)(b) defines "Physical assault" as intentionally causing or attempting to cause physical harm to another through force or violence. Elli was never charged or accused of any physical assault. Sharp's false information was placed onto page one of the **board packet**. The false information was given directly to the Okemos School Board, on page one, and the false information impacted Elli's due process rights and fundamental fairness and tainted Elli's disciplinary proceedings.

511.    Under "pupil's disciplinary history," the **board packet** states that "Elli has had

***three documented incidents this year***. Each one involved lying during the investigation."

(emphasis added). This is outrageously false. Prior to May 17, 2022, Elli had no

behavioral discipline history. In the board packet, there are log entries (Addendum C)

from Okemos Public Schools, which reference an event from ***January 11, 2021***, where

Elli was found responsible for an academic integrity violation for printing over a

reference photograph and coloring over the reference photograph instead of drawing the

picture herself. Elli was found responsible for the violation and given a zero on the

project. This happened in ***January 2021*** – ***not in 2022***. Further, the board packet

references the suspicionless bathroom search that happened on April 8, 2022. Sharp

added this log entry on May 10, 2022 – in an effort to pile onto Elli and make her look

worse to the school board. The log entry has an incorrect date of "April 13, 2022." On

April 8, 2022, Okemos High School administrators had zero evidence and zero

reasonable, articulable suspicion that Elli was vaping and in possession of a vape pen or

any other contraband. Three Okemos High School administrators illegally searched Elli,

found nothing, and Elli returned to class. Elli was not disciplined for anything that day

and as a result of this unlawful search. And Elli did not lie about anything regarding that

unlawful search. The **board packet** contains provable and demonstrable lies.

512.    The board packet contains additional lies. The board packet states, "Elli filed false

criminal charges against a school administrator, and also brought this to the attention of

the school district. The accusations were both slanderous and defamatory." **First**, Elli

never filed any criminal charges. This is false. **Second**, Elli never brought anything to

anyone in the school district. Sharp, who is believed to have authored all of the board

packet lies, is probably referring to an email that Michael wrote to the school district, on

May 5, 2022, to complain about the suspicionless searches. But Elli never brought

anything to the attention of anyone in the school district. **Third**, Elli never committed any

defamation, as described below. This is false.

### Defamation

513.    "The elements of a cause of action for **defamation** are: "(1) a false and

defamatory statement concerning the plaintiff; (2) an unprivileged communication to a

third party; (3) fault amounting to at least negligence on the part of the publisher; and (4)

either actionability of the statement irrespective of special harm or the existence of

special harm caused by the publication." *Rouch v. Enquirer & News of Battle Creek*, 440

Mich. 238, 251, 487 N.W.2d 205, 211 (1992) (citing *Locricchio v. Evening New Ass'n*,

438 Mich. 84, 115-16, 476 N.W.2d 112 (1991))."

514.    "A plaintiff must plead a defamation claim with specificity. *Royal Palace Homes,*

*Inc. v. Channel 7 of Detroit*, 197 Mich. App. 48, 52, 495, N.W.2d. 392, 394 (Mich. Ct.

App. 1992). The plaintiff cannot rely on general, conclusory allegations to support a

defamation claim, but must specifically identify the statements alleged to be defamatory.

*Id*. at 52-54, 57, 495 N.W.2d. at 394-95."

515.    "To prevail in a defamation claim, a plaintiff who is considered to be a "public

official" or "public figure" must prove that the defendant acted with "actual malice"

when publishing the alleged defamatory material. *New York Times v. Sullivan*, 376 U.S.

254, 279-280, 84 S. Ct. 710, 726 (1964). A defendant acts with "actual malice" when he

acts "with knowledge that [the statement] was false or with reckless disregard of whether

it was false . . ." *Id*. at 280, 710 S. Ct. at 726. In *Rosenblatt v. Baer*, the Supreme Court

elaborated on who is a "public official" for purposes of the *New York Times* malice standard, providing: "It is clear . . . that the 'public official' designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85, 86 S. Ct. 669, 676 (1966). The Court further provided that the analysis of whether a plaintiff is a public official depends upon the following: Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . the *New York Times* malice standard[] apply. *Id.* at 86, 86 S. Ct. at 676."

516.    "In the following cases, the courts held that school principals are public officials: *Johnson v. Robbinsdale Indep. Sch. Dist. No. 281*, 827 F. Supp. 1439, 1443 (D. Minn. 1993) (finding that "public school principals criticized for their official conduct are public officials" where principal sued students' parents after they wrote a letter critical of the principal's conduct); *Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir. 1988) (finding that principal was a public official where "her performance as a public official was open to public comment" and, while not an elected public official, "she possessed great discretion over the operation of the [school]" and "how she used that discretion was the subject of legitimate public debate"); *State v. Defley*, 395 So.2d 759, 761 (La. 1981) (quoting *Rosenblatt*, 383 U.S. at 86, 86 S. Ct. at 676, and concluding that a school supervisor would be considered a public official because the position "'is such that the public has an independent interest in the qualification and performance of the person who

70

holds it, beyond the general public interest in the qualifications and performance of all government employees,'"); *Reaves v. Foster*, 200 So.2d 453, 456 (Miss. 1967) (holding that school principal was a public official, reasoning that statements criticizing her acts were "fair comment in a matter concerning a large sector of the county's population, in the handling of a matter connected with government, and in an effort by those involved to better conditions in the school as they deemed it" and that the State Constitution "provides . . . a common school system, and the laws provide for the selection of the trustees and county superintendents, and the appointment by the superintendent and board of trustees of the principal to be in charge of a school where the young of the county are given an opportunity to secure an education at the taxpayers' expense."); *Kapiloff v. Dunn*, 343 A.2d 251, 258 (Md. Ct. Spec. App. 1975) (finding that high school principal was a public official under the *New York Times* standard and that the principal's "suitability for the position was a matter of public or general interest or concern"); *Junior-Spence v. Keenan*, No. 89-284, 1990 WL 17241, at *4 (Tenn. Ct. App. Feb. 28, 1990) (unpublished opinion) (finding that principal was a public official because she was an authority figure and a government representative to the students and parents with whom she dealt and her actions affected the taxpayers in the State)."

517.    The United States District Court for the Eastern District of Michigan held that "principals are public officials to the extent their defamation claims involve communications relating to their conduct as principals. *Freddie Williams Jr. v Detroit Board of Education*, ED Mich 2007, quoted above.

518.    Cironi is a public official. Elli did not act with malice in anything that Elli said or did. And there is no defamation regarding this case.

519.     Further, ***substantial truth*** is an absolute defense to any defamation claim. *Collins v Detroit Free Press*, 245 Mich App 27; 627 NW2d 5 (2001); *Masson v New York Magazine,* 501 US 496 (1991).

520.     Further, ***opinion and fair comment privileges*** apply to defamation claims. *Gertz v Robert Welch, Inc*, 418 US 323 (1974).

521.     Further, in Michigan, only allegations of "crimes of moral turpitude" and "infamous crimes" can be the basis of a defamation claim. *Lakin v Rund*, 318 Mich App 127 (2016).

522.     Further, a defamation clam cannot be maintained when a claim depends on statements made to the police concerning criminal activity. *Eddington v Torrez*, 311 Mich App 198 (2015). Cironi's claim would be that Elli falsely reported alleged criminal activity. Elli disagrees, as Elli was never reporting a crime. But if a court in a defamation lawsuit believed that Elli was reporting a crime, then her statements would be absolutely privileged from any defamation lawsuit. *Torrez*; *Id*.

523.     Further, Cironi would have absolutely no claim for any damages against Elli – as Cironi suffered no compensatory damages and no reputational harm.

524.     For all of the above-listed reasons, **Elli did not commit any defamation.**

525.     Sharp, having zero legal training and education, upon information and belief, lied to the Okemos School Board and falsely asserted defamation and slander against Elli.

526.     The **board packet** lies tainted Elli's due process rights and her disciplinary hearing.

**Board Packet – Continued**

527.    The **board packet** contained additional lies. The letter that Sharp wrote dated

May 17, 2022 is replete with lies. Sharp misrepresented what happened on April 8, 2022

and has the wrong date in the letter. Further, in describing the April 2022 event, Sharp

lies about Elli "messaging her parents and fabricat[ing] a story indicating that she was

searched for no reason and being targeted." This is a lie. Elli never messaged her parents

after the suspicionless search that occurred on April 8, 2022. Further, Sharp lies about

Elli's parents showing up to school on April 13, 2022. That never happened. This is a lie.

Further, Elli's parents were not "satisfied" with Sharp's explanation of what happened in

reference to the April 2022 event. This is a delusional lie. Further, Elli never announced

to a group of females that she was going to get Cironi in trouble and Elli never messaged

her parents to get Cironi in trouble. This is false. This is more lies that are made up and

fabricated by Sharp. Further, Elli never said anything about eye contact with Cironi. This

is false. Further, Michael's email from May 5, 2022 never accused Cironi, or anyone else,

of criminal conduct. This is a lie. Sharp also mischaracterized the text messages between

AL and Elli on May 4, 2022 and May 5, 2022.

528.    The **board packet** contained additional lies in the "Summary of Witness

Statement (Student 1)." First, this is not a written statement from Student 1, who is AL.

This is a "summary" written by an adult, most likely Sharp himself. Second, this

"summary" contains lies. Elli and SE were not vaping in the bathroom on **May 4, 2022**.

That is false. Third, the "summary" again references Elli filing a false police report,

which is untrue. This was the false narrative pushed by Sharp and not a statement from

AL (Student 1).

**Legal Counsel**

529.    Elli and her family retained their current legal counsel on Friday, May 13, 2022 – after learning about the school board hearing scheduled for Tuesday, May 17, 2022.

530.    On Friday, May 13, 2022, at 4:07 pm., Elli's counsel emailed an appearance of counsel and a signed authorization to release protected information to John Hood, Superintendent of Okemos Public Schools, and to Hallead, Cironi, and Sharp.

531.    Elli's counsel requested Elli's full CA 60 file and other requested documents.

532.    Elli's counsel expressed concerns regarding Cironi being part of the Okemos High School administration that was making recommendations to the Okemos School Board, as Cironi was a direct fact witness to the school disciplinary matter and had a clear bias regarding the event and Elli.

533.    On Sunday, May 15, 2022, Elli's counsel received an email from Jennifer Starlin, attorney for Okemos Public Schools.

534.    Starlin indicated that Starlin would provide Elli's counsel with requested information once it is ready.

535.    Elli's counsel responded with clarification and additional information regarding concerns about Elli's case. (Email communication, **Exhibit 13**).

536.    On Monday, May 16, 2022 at 10:15 p.m., Starlin emailed Elli's counsel the CA60 file for Elli, which was 131 pages long.

537.    Starlin informed Elli's counsel that the board packet was not completed yet and that Elli's counsel would receive the completed board packet when it was ready.

538.     Starlin emailed Elli's counsel the 37-page board packet on May 17, 2022 at 3:49 p.m., with a scheduled board hearing for 6:30 p.m.

## Board Decision

539.     The Okemos School Board voted to expel Elli from Okemos High School, as discussed.

540.     This was an improper decision that was tainted by lies and misrepresentations by Sharp, did not properly account for the 1310d factors under MCL 380.1310d, and was unreasonable and arbitrary and capricious. *Supra*.

## Elli's Rights

541.     Elli's words and conduct in this case constitute protected speech under the First Amendment. *Reno v ACLU*, 521 US 844; 117 S Ct 2329 (1997); *Kaplan v California*, 413 US 115; 93 S Ct 2680 (1973); *James v Meow Media, Inc*, 300 F3d 683 (6th Cir 2002).

542.     Elli's words and conduct in this case did not present some grave and imminent threat that the government has the power to prevent. *Near v Minnesota ex rel Olson*, 283 US 697; 51 S Ct 625 (1931).

543.     Elli's words and conduct in this case did not constitute fighting words. *Chaplinsky v New Hampshire*, 315 US 568; 62 S Ct 766 (1942).

544.     Elli's words and conduct in this case were not speech that was integral to criminal conduct. *Giboney v Empire Storage & Ice Co*, 336 US 490; 69 S Ct 684 (1949).

545.     Elli's words and conduct in this case did not constitute defamation. *New York Times Co v Sullivan*, 376 US 254; 84 S Ct 710 (1964).

546.     Elli's words and conduct in this case did not constitute incitement to imminent lawlessness. *Brandenburg v Ohio*, 395 US 444; 89 S Ct 1827 (1969).

547.     Elli's words and conduct in this case did not constitute fraud. *Virginia Bd of Pharmacy v Virginia Citizens Consumer Council, Inc*, 425 US 748; 96 S Ct 1817 (1976).

548.     Elli's words and conduct in this case were not child pornography. *New York v Ferber*, 458 US 747; 102 S Ct 3348 (1982).

549.     Elli's words and conduct in this case were not vulgar, lewd, indecent, or obscene. *Bethel School District No 403 v Fraser*, 478 US 675; 106 S Ct 3159 (1986); *Miller v California*, 413 US 15; 93 S Ct 2607 (1973).

550.     Elli's words and conduct in this case were not part of any school-sponsored activity. *Hazelwood School District v Kuhlmeier*, 484 US 260; 108 S Ct 562 (1988).

551.     Elli's words and conduct in this case did not advocate illegal drug use. *Morse v Frederick*, 551 US 593; 127 S Ct 2618 (2007).

552.     Elli's words and conduct in this case were not a "true threat" as defined under state and federal jurisprudence. *Virginia v Black*, 538 US 343; 123 S Ct 1536 (2003); *Watts v United States*, 394 US 705; 89 S Ct 1399 (1969).

553.     Elli's words and conduct in this case did not create substantial disruption; and there was no reasonable forecast of substantial disruption for this isolated event.

## Count I: First Amendment Violation (Against All Defendants)

### (First Amendment; Article I. Section 5 of Michigan Const; 42 USC § 1983)

554.     Elli re-alleges and incorporates by reference paragraphs 1 through 553 of this Complaint.

555.    The First Amendment to the United States Constitution protects Elli's off-campus speech and on-campus speech.

556.    And Article I, Section 5 of the Michigan Constitution of 1963 protects Elli's off-campus speech and on-campus speech.

557.    And there are no demonstrable factors that would give rise to any reasonable forecast of any substantial and material disruption to Okemos Public Schools' students and staff.

558.    Defendants did not have any constitutionally justified reason, nor any legal authority, to discipline Elli for Elli's words and conduct in this case, as described above.

559.    Defendants are "persons" under 42 USC § 1983.

560.    Further, in analyzing this case under secondary school precedent, after *Mahanoy Area School District v BL*, the law is sufficiently clear, every reasonable official understands, and the constitutional question is beyond debate, regarding regulation of off-campus student speech, and on-campus student speech, such as Elli's words and conduct in this case.

561.    Defendants are not entitled to qualified immunity. *Kisela v Hughs,* 548 US ___; 138 S Ct 1148 (2018).

562.    Schools maintain a license to regulate off-campus speech for cases of "serious or severe bullying or harassment targeting particular individuals; threats aimed at teachers or other students; the failure to follow rules concerning lessons, the writing of papers, the use of computers, or participation in other online school activities; and breaches of school security devices, including material maintained within school computers."

563.    But Elli's words and conduct in this case were not serious or severe bullying or harassment of anyone. And Elli's words and conduct were not threats aimed at any student or teacher, as defined by state and federal law. For any off-campus speech for Elli, *Mahanoy* makes clear that: (a) schools will rarely stand *in loco parentis*, and thus off-campus speech "will normally fall within the zone of parental, rather than school-related responsibility, (b) because regulation of off-campus speech would, potentially, cover all speech in a twenty-four-hour period, "court must be more skeptical of a school's efforts to regulate off-campus speech, for doing so may mean the student cannot engage in that kind of speech at all," and (c) schools, themselves, have "an interest in protecting a student's unpopular expression, especially when the expression takes place off campus." This applies to the ability to regulate student speech and whether there is substantial disruption of the reasonable forecast of substantial disruption.

564.    Moreover, there was no substantial disruption or reasonable forecast of substantial disruption of violation of anyone's rights regarding Elli's words and conduct in this case – for all on-campus speech and all off-campus speech from Elli.

565.    In this case, Defendants intentionally, without legal authority, and under color of state law, violated Elli's clearly established rights by illegally punishing and expelling Elli for Elli's protected speech. Defendants violated Elli's clearly established rights in violation of 42 USC § 1983.

566.    As a direct and proximate result of Defendants' actions, Elli has suffered, and continues to suffer, severe emotional distress in an amount to be proven at trial.

567.    Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

568.    Defendants violated Elli's clearly established rights by expelling Elli because of Elli's protected speech.

569.    Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

570.    Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

571.    Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

572.    Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

573.    Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

574.    Elli is entitled to an expungement of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

### Count II: First Amendment Retaliation (Against All Defendants)
### (First Amendment; 42 USC § 1983)

575.    Elli re-alleges and incorporates by reference paragraphs 1 through 574 of this Complaint.

576.    Elli was engaged in constitutionally protected activity through her words and conduct.

577.    This case started with Elli being unlawfully searched under the Fourth Amendment, multiple times, and Elli and her family waging a complaint about the suspicionless bathroom searches that were occurring at Okemos High School.

578.    While there are disputed issues of fact concerning what happened in the school bathroom on May 4, 2022, it is undisputed that Cironi bent down and looked under the bathroom stalls.

579.    Plaintiffs assert that Cironi acted without any proper cause or legal justification. See for example: *In re Appeal in Pima County Juvenile Action*, 152 Ariz. 431 (App. 1987) (search of a high school student's pockets based on, among other things, the student's name being mentioned in staff meetings during discussions of drug use, was not supported by reasonable suspicion).

580.    Elli and her family complained about the policy and practice and custom of the suspicionless bathroom searches.

581.    When Elli and her family complained about the policy and practice and custom of the suspicionless bathroom searches, Defendants retaliated against Elli and violated Elli's constitutional rights.

582.    The First Amendment is an important part of our system of self-government. It specifically allows for the people "to petition the government for a redress of grievances." US Const, Am I.

583.    Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to

protect the free discussion of governmental affairs. This of court includes discussions of the candidates, structures, and forms of government, the manner in which government is operated or should be operated, and all such matters relating to political processes. *Mills v Alabama*, 384 US 214 (1966); *Stromberg v California*, 283 US 359 (1931) ("The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system").

584.    The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *NY Times Co v Sullivan*, 376 US 254 (1964) (citing *Terminiello v Chicago*, 337 US 1 (1949) and *De Jonge v Oregon*, 299 US 353 (1937).

585.    In this case, Elli was engaged in pure speech for her criticism of the government officials (Cironi and others) when Elli was challenging the suspicionless bathroom searches. *Mahanoy*; *supra*.

586.    Defendants will try to frame Elli's punishment as responsive to Elli's text message to "get Cironi in trouble" and will frame Elli's discussion with the police as filing a false police report. But this is false.

587.    Elli never called the police herself. Elli never filed any police report. And Elli never accused anyone of criminal behavior.

588.    Elli spoke to the police in order to challenge the suspicionless bathroom searches, which is protected speech. *Mahanoy*; *supra*.

589.    Defendants' framing of this matter as the filing of a false police report is false and has been (a) disproven by the Ingham County Prosecutor specifically declining to press charges against Elli for any such behavior, and (b) is a smokescreen and guise for Defendants' flagrant retaliation against Elli and Elli's family for daring to challenge the school bathroom search policy and practice and custom of Okemos Public Schools.

590.    Defendants' act of expelling Elli from Okemos Public Schools would deter or chill a person of ordinary firmness from continuing to engage in constitutionally protected activity such as challenging the search and seizure policy in the school bathrooms.

591.    Further, Defendants' decision to expel was motivated primarily by Elli's protected pure speech in challenging the search and seizure policy in the school bathrooms., which is constitutionally protected activity.

592.    Accordingly, Defendants have engaged in First Amendment retaliation against Elli and are liable to Elli.

593.    In engaging in First Amendment retaliation against Elli, Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

594.    Defendants violated Elli's clearly established rights by expelling Elli because of Elli's pure speech.

595.    Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

596. Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

597. Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

598. Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

599. Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

600. Elli is entitled to an expungement of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

### Count III: *Monell* liability (Against All Defendants)

### (First Amendment; Fourth Amendment; 42 USC § 1983)

601. Elli re-alleges and incorporates by reference paragraphs 1 through 600 of this Complaint.

602. A local government entity may not be sued under 42 USC § 1983 on a respondeat superior theory of liability.

603. But a local government entity may be subject to §1983 liability for: (a) the existence of an illegal official policy or legislative enactment, (b) that an official with final decision making authority ratified illegal actions, (c) the existence of a policy of inadequate training or supervision, or (d) the existence of a custom of tolerance or acquiescence of federal rights violations. *Burgess v Fischer*, 735 F3d 462 (6th Cir 2013); *City of Canton v Harris*, 489 US 378; 109 S Ct 1197 (1989); *Monell v New York Dep't Soc Servs*, 436 US 658; 98 S Ct 2018 (1978).

604.    "Policy" refers to "official policy, a deliberate choice of a guiding principal or procedure made by the municipal official who has final authority regarding such matters. *Corwin v City of Independence Mo*, 829 F3d 695 (8th Cir 2016).

605.    For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v City of Brooklyn, Minn*, 486 F3d 85 (8th Cir 2007).

606.    In this case, the board policy 5144 and student code of conduct both reference "verbal assault." And both policies are unconstitutional on their face. See *Smith ex rel Smith v Mt Pleasant Public Schools*, 285 F Supp 2d 987 (ED Mich 2003); *Supra*. [noting that words alone have not been sufficient to constitute an assault at common law. See *People v Gardner*, 402 Mich 460; 265 NW2d 1 (1978) and holding that the verbal assault statute, MCL 380.1311a(2), is vague and overbroad].

607.    Plaintiffs adopt the reasoning and rationale, in full, of the *Smith ex rel Smith v Mt Pleasant Public Schools* case. (*Smith ex rel Smith v Mt Pleasant Public Schools*, **Exhibit 14**).

608.    Defendants utilized policies that were unconstitutional on their face, and Defendants are liable under *Monell* and its progeny.

609.    Further, the Okemos School Board and its members, including Defendants Bolton and Cavanaugh and Gebara and Lynn, are final policy makers whose decisions are not subject to review by another official or governmental body. *McMillian v Monroe County*, 520 US 781 (1997).

610.    The Okemos School Board and its members, including Defendants Bolton and Cavanaugh and Gebara and Lynn, enacted the unconstitutional policy of verbal assault in the Okemos board policy 5144 and the student code of conduct.

611.    The unconstitutional policies violated Elli's constitutional rights.

612.    Accordingly, Defendants are liable under *Monell* and its progeny.

613.    Further, §1983 claims for failure to train employees requires proof that: (a) the training practices were inadequate, (b) the local government entity was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by the local government entity, and (c) the alleged deficiency in the training procedures actually caused the plaintiff's injury. *City of Canton*; *Id*.

614.    Plaintiffs must also prove that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [local government entity] can reasonably be said to have been deliberately indifferent to the need." *Id*.

615.    In this case, Defendants violated Elli's Fourth Amendment constitutional rights to privacy, bodily integrity, and unreasonable intrusions by the government – by illegally searching Elli in April 2022 and May 2022.

616.    Defendants further violated Elli's First Amendment right to protected speech when Elli challenged the suspicionless bathroom search policy – by retaliating against Elli and expelling Elli from Okemos High School.

617.    There was an obvious need to train employees on First Amendment law, particularly in light of the *Mahanoy* case in 2021. And there was an obvious need to train

regarding Fourth Amendment law and reasonable searches and seizures and privacy of female students in the school bathrooms.

618.    The inadequacy of the training by Okemos Public Schools was so likely to result in the violation of constitutional rights, which is precisely what happened to Elli in this case.

619.    Further, the customs and practices of the unlawful bathroom searches that were occurring at Okemos High School, and the unlawful student searches that were occurring at Okemos High School, amount to policy for Defendants.

620.    Plaintiff asserts that the Okemos School Board and Superintendent Hood, who ratified the customs and practices of the unlawful bathroom searches, had actual or constructive knowledge of the unlawful search customs and practices. *Deaton v Montgomery County*, 989 F2d 885 (6th Cir 1993).

621.    Accordingly, Defendants are liable under *Monell* and its progeny.

622.    In engaging in *Monell* liability against Elli, Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

623.    Defendants violated Elli's clearly established rights by expelling Elli because of Elli's pure speech.

624.    Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

625.     Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

626.     Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

627.     Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

628.     Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

629.     Elli is entitled to an expungment of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

### Count IV: Fourteenth Amendment Violation – Procedural Due Process (Against All Defendants)

### (Fourteenth Amendment; 42 USC § 1983)

630.     Elli re-alleges and incorporates by reference paragraphs 1 through 629 of this Complaint.

631.     Elli has a protected property interest in her continued education.

632.     Elli has a protected liberty interest her good name, reputation, honor, and integrity.

633.     And Elli can show a stigma, plus his protected property interest, in her continuing education. *Goss v Lopez*, 419 US 565; 95 S Ct 729 (1975); *Flaim v Med Coll of Ohio*, 418 F 3d 629 (6th Cir 2005); *Doe v University of Cincinnati*, 872 F 3d 393 (6th Cir 2017); *Doe v Miami University*, 882 F 3d 579 (6th Cir 2018); *Jaksa v Regents of Univ of Mich*, 597 F Supp 1245 (ED Mich 1984); *J Endres v Northeast Ohio Med Univ*, 938 F3d

281 (6th Cir 2019); *Wisconsin v Constantineau*, 400 US 433; 91 S Ct 507 (1971); *Paul v Davis*, 424 US 693 (1976); *Miskowski v Martin*, 57 Fed Appx 246 (6th Cir 2003).

634.    Elli has been prejudiced by the decisions of Defendants and by Defendants' continuing violation of Elli's rights; and Elli's information and defense to the allegations against her would have led to a different outcome but for Defendants' violation of Elli's rights. *Baynes v Cleland*, 799 F 3d 600 (6th Cir 2015); *Brosseau v Haugen*, 543 US 194 (2004); *Mendoza-Garcia v Barr*, 918 F 3d 498 (6th Cir 2019); *Sako v Gonzales*, 434 F 3d 857 (6th Cir 2006). This violated Elli's clearly established rights.

635.    For the reasons stated above, Defendants failed to provide proper procedural due process for this case and tainted the proceedings. This violated Elli's clearly established rights.

636.    In engaging in procedural due process violations against Elli, Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

637.    Defendants violated Elli's clearly established rights by expelling Elli because of Elli's pure speech.

638.    Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

639.    Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

640.    Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

641.    Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

642.    Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

643.    Elli is entitled to an expungment of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

644.    Moreover, Defendants must make changes to their policies, practices, customs, and procedures by stopping the illegal bathroom searches and school searches and not punishing and retaliating against students for protected speech and not tainting the process of a discipline hearing by material false written material and testimony. Implementing such changes will not impose undue fiscal and administrative burdens upon WMU. *Matthews v Eldridge*, 424 US 319 (1976).

**Count V: Fourteenth Amendment Violation – Substantive Due Process (Against All Defendants)**

**(Fourteenth Amendment; 42 USC § 1983)**

645.    Elli re-alleges and incorporates by reference paragraphs 1 through 644 of this Complaint.

646.    For the reasons set forth above, Defendants have deprived Elli of her constitutionally protected right to continued enrollment at Okemos Public Schools. *Megenty v Stenger*, 27 F 3d 1120 (6th Cir 1994); *Regents of Univ of Mich v Ewing*, 474

US 214; 106 S Ct 507 (1985); *Bd of Curators v Horowitz*, 435 US 78; 98 S Ct 948 (1978).

647.    Defendants deprived Elli of her protected property interests: in her continuing education and in a transcript unmarred by a permanent expulsion on his record. Defendants' decision to permanently expel Elli was done in violation of Elli's constitutionally protected First Amendment and Fourth Amendment rights, was patently unreasonable, and was disproportionate to any alleged offense that Defendants assert that Elli committed.

648.    And Defendants' decision to permanently expel Elli was arbitrary and capricious, not supportable on any rational basis, was a willful and unreasoning action, was without consideration and in disregard of the facts and circumstances of Elli's case, and shocks the conscience. *Valot v Southeast Local Sch Dist Bd of Educ*, 107 F 3d 1220 (6th Cir 1997); *Silver v Franklin Twp Bd of Zoning Appeals*, 966 F 2d 1031 (6th Cir 1992); *Pearson v City of Grand Blanc*, 961 F 2d 1211 (6th Cir 1992) (quoting *Stevens v Hunt*, 646 F 2d 1168 (6th Cir 1981); See also *Ala & Coushatta Tribes v Big Sandy Sch Dist*, 817 F Supp 1319 (ED Tex 1993).

649.    Further, there is no sufficient post-deprivation remedy sufficient to absolve Defendants of its constitutional violations in this case. *Parratt v Taylor*, 451 US 527; 101 S Ct 1908 (1981).

650.    In engaging in substantive due process violations against Elli, Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

651.   Defendants violated Elli's clearly established rights by expelling Elli because of Elli's pure speech and political speech.

652.   Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

653.   Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

654.   Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

655.   Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

656.   Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

657.   Elli is entitled to an expungment of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

658.   .

659.   Moreover, Defendants must make changes to their policies, practices, customs, and procedures by stopping the illegal bathroom searches and school searches and not punishing and retaliating against students for protected speech and not tainting the process of a discipline hearing by material false written material and testimony. Implementing such changes will not impose undue fiscal and administrative burdens upon WMU. *Matthews v Eldridge*, 424 US 319 (1976).

**Count VI: Breach of Contract (Against All Defendants)**

**(Michigan common law)**

660.    Elli re-alleges and incorporates by reference paragraphs 1 through 659 of this Complaint.

661.    "A student may raise breach of contract claims arising from a university's alleged failure to comply with its rules governing disciplinary proceedings." *Anderson v Vanderbilt Univ*, 450 F App'x 500 (6th Cir 2011).

662.    The appropriate question in a breach of contract claim is "whether the proceedings fell within the range of reasonable expectations of one reading the relevant rules, an objective reasonableness standard." *Faparusi v Case W Reserve Univ*, 711 F App'x 269 (6th Cir 2017).

663.    In this case, for the reasons stated above, Defendants failed to investigate the allegations of targeted bullying against Elli and failed to comply with their own student code of conduct and board policy with regard to providing Elli with due process and fundamental fairness and a disciplinary hearing that was not tainted by material false statements and testimony from Sharp.

664.    Defendants breached their contractual obligations with Elli, which caused Elli damages.

665.    In breaching its contractual obligations with Elli, Defendants acted with reckless, wanton, or callous indifference to Elli's protected constitutional rights, which entitles Elli to punitive damages in an amount appropriate to punish Defendants and to make an example of them to the community.

666.    Defendants violated Elli's clearly established rights by expelling Elli because of Elli's pure speech.

667.    Elli is entitled to compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

668.    Elli is entitled to punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

669.    Elli is entitled to recover costs, including reasonable attorney fees, pursuant to 42 USC § 1988.

670.    Elli is entitled to prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli's First Amendment rights.

671.    Elli is entitled to immediate reinstatement to Okemos High School, to resume all school activities, and to complete her diploma at Okemos High School.

672.    Elli is entitled to an expungment of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

673.    .

674.    Moreover, Defendants must make changes to their policies, practices, customs, and procedures by stopping the illegal bathroom searches and school searches and not punishing and retaliating against students for protected speech and not tainting the process of a discipline hearing by material false written material and testimony. Implementing such changes will not impose undue fiscal and administrative burdens upon WMU. *Matthews v Eldridge*, 424 US 319 (1976).

**Count VII: Policy is Unconstitutional (Against All Defendants)**

675.   Elli re-alleges and incorporates by reference paragraphs 1 through 674 of this Complaint.

676.   For the reasons stated above, sections of Defendants' board policy 5144 and student code of conduct are unconstitutional on their face and as applied to Elli.

677.   Plaintiffs seek an order declaring the sections of board policy 5144 and the student code of conduct that address verbal assault to be unconstitutional.

678.   Plaintiffs further seek an injunction preventing Defendants from enforcing the policy of verbal assault as set forth in board policy 5144 and the student code of conduct.

**Count VIII: Policy and Custom is Unconstitutional in Violation of Fourth Amendment (Against All Defendants)**

679.   Elli re-alleges and incorporates by reference paragraphs 1 through 678 of this Complaint.

680.   For the reasons stated above, the bathroom search policy and customs of the Okemos Public Schools and Defendants is unconstitutional and in violation of the Fourth Amendment and the Michigan Constitution.

681.   Plaintiffs seek an order declaring the bathroom search policy and custom to be unconstitutional.

682.   Plaintiffs further seek an injunction preventing Defendants from implementing the unconstitutional bathroom search policy and custom.

**REQUEST FOR RELIEF**

WHEREFORE, Elli respectfully requests the Honorable Court to:

A. Grant Elli damages in the amount of **3 million dollars**, as described above and below

B. Grant Elli compensatory damages for Defendants' violation of Elli's constitutional rights. *Carey v Piphus*, 435 US 247 (1978); *Minneci v Pollard*, 565 US 118 (2012).

C. Grant Elli punitive damages for Defendants' reckless or callous indifference to Elli's federally protected rights. *Smith v Wade*, 461 US 30 (1983).

D. Grant Elli costs, including reasonable attorney fees, pursuant to 42 USC § 1988 and any other state or federal law.

E. Declare and making a finding that Defendants acted outside the scope of their authority in expelling Elli from Okemos High School, in violation of Elli's First Amendment rights.

F. Declare and make a finding that Defendants engaged in First Amendment retaliation against Elli.

G. Declare and make a finding that Defendants are responsible for *Monell* liability, as stated above.

H. Grant Elli prospective injunctive and declaratory relief and a permanent injunction prohibiting further violations of Elli First Amendment rights.

I. Grant Elli immediate reinstatement to Okemos High School, allow Elli to resume all school activities, and allow Elli to complete her diploma at Okemos High School.

J.   Grant Elli an expungment of her record and the removal of any reference to an expulsion from Okemos Public Schools from Elli's transcript and permanent record.

K.   Compel Defendants to make changes to their policies, practices, customs, and procedures by stopping the illegal bathroom searches and school searches and not punishing and retaliating against students for protected speech and not tainting the process of a discipline hearing by material false written material and testimony. Implementing such changes will not impose undue fiscal and administrative burdens upon WMU. *Matthews v Eldridge*, 424 US 319 (1976).

L.   Issue an order declaring the sections of board policy 5144 and the student code of conduct that address verbal assault to be unconstitutional

M.   Grant an injunction preventing Defendants from enforcing the policy of verbal assault as set forth in board policy 5144 and the student code of conduct

N.   Issue an order declaring the bathroom search policy and custom to be unconstitutional

O.   Grant an injunction preventing Defendants from implementing the unconstitutional bathroom search policy and custom, and

P.   Grant any other relief as just and equitable.


Dated: September 6, 2022                      _____/s/ Eric J. Sheppard_____
                                                         By: Eric J. Sheppard, P71914
                                                         Attorney for Plaintiffs
                                                         2109 Hamilton Road, Suite 206
                                                         Okemos MI 48864
                                                         Ph: 517-618-1580
                                                         Fx: 517-913-6321
                                                         ericsheppard16@gmail.com

**I HEREBY STATE AND AFFIRM THAT I HAVE READ THE FOREGOING VERIFIED COMPLAINT AND THAT IT IS TRUE AND ACCURATE TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.**

Dated: September 6, 2022                          _____/s/ Pauline Ashton_____
                                                 By: Pauline Ashton, next friend
                                                 for Elli Rose Block


## JURY DEMAND

Plaintiffs, Pauline Ashton, next friend for Elli Rose Block, a minor, hereby demand a trial by jury.

Dated: September 6, 2022                          _____/s/ Eric J. Sheppard_____
                                                 By: Eric J. Sheppard, P71914
                                                 Attorney for Plaintiffs
                                                 2109 Hamilton Road, Suite 206
                                                 Okemos MI 48864
                                                 Ph: 517-618-1580
                                                 Fx: 517-913-6321
                                                 ericsheppard16@gmail.com